UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

WILLARD OWENS, JEREMY ELLISON,    :
THOMAS LIVINGSTON, JAMES ROUSSEVE,  :
Individually and on Behalf of All Other Persons  :
Similarly Situated,    :
    :
        Plaintiffs,  :  14 Civ. 1909 (VEC) (GWG)
    :
      - against -    :
    :
FRESH DIRECT LLC, JASON ACKERMAN,  :  **ORAL ARGUMENT REQUESTED**
and DAVID MCINERNEY, Jointly and  :
Severally,    :
    :
        Defendants.  :

------------------------------------------------------------ x

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION, PURSUANT TO FED. R. CIV. P. 56, FOR SUMMARY JUDGMENT, AND ALTERNATIVELY, FOR DISMISSAL, PURSUANT TO FED. R. CIV. P. 12(b)(6)

David M. Wirtz
Sarah E. Moss
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022
(212) 583-9600

David A. Berger
Louis A. Craco, Jr.
Kevin L. MacMillan
Lauren J. Pincus
ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
(212) 571-0550

*Attorneys for Defendants Fresh Direct, LLC, Jason Ackerman and David McInerney*

Table of Contents

Page

Table of Authorities .................................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 3

    A.    Fresh Direct's Business ................................................................................... 3

    B.    Fresh Direct's Delivery Operations ............................................................... 4

    C.    Fresh Direct's Delivery Fee .......................................................................... 4

    D.    Fresh Direct's Tipping Policy ....................................................................... 6

    E.    Plaintiffs' Claims ........................................................................................... 6

ARGUMENT ................................................................................................................................. 7

I.    SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING
    PLAINTIFFS' NYLL CLAIM, BECAUSE IT IS PREEMPTED BY THE
    FEDERAL AVIATION ADMINISTRATION AUTHORIZATION ACT ...................... 7

II.    PLAINTIFFS' NYLL 196-D CLAIM IS PREEMPTED BY THE FLSA
    AND THEREFORE SHOULD BE DISMISSED PURSUANT TO
    RULE 12(b)(6) ................................................................................................................. 10

    A.    Obligations Imposed by NYLL § 196-d Frustrate the Purpose of
        the FLSA and IRS Regulations ..................................................................... 11

    B.    Limited Caselaw From Other Jurisdictions Addressing Conflict
        Preemption is Inapposite ............................................................................... 12

III.    PLAINTIFFS' NYLL CLAIM ALSO FAILS TO STATE A CLAIM FOR
    RELIEF AND SHOULD THEREFORE BE DISMISSED PURSUANT
    TO RULE 12(b)(6) .......................................................................................................... 14

    A.    Rule 12(b)(6) Standard for Dismissal ........................................................ 14

    B.    Plaintiffs' Claim for Relief Under NYLL § 196-d Should Be
        Dismissed Because Fresh Direct's Delivery Fee Is Not A Gratuity
        And No Reasonable Customer Could View It As One .................................. 15

        1.    Fresh Direct's Delivery Fee Is Not A Gratuity ............................... 15

Page

      2.    Fresh Direct's Delivery Fee Does Not "Purport[] To Be A
           Gratuity." ........................................................................................17

  C.  Even If The Delivery Fee Were A Gratuity Plaintiffs Would Not
      Be Entitled To It Because They Fail To Allege Entitlement to
      Share in Any Tips ...........................................................................21

IV.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST THE
     INDIVIDUAL DEFENDANTS BECAUSE THEY HAVE FAILED TO
     PLEAD ANY FACTS THAT THE INDIVIDUAL DEFENDANTS HAD
     "OPERATIONAL CONTROL" OVER THE PUTATIVE CLASS ................................ 22

CONCLUSION....................................................................................................... 25

Table of Authorities

Cases                                                                                              Page(s)

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)................................................................................................................ 7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).......................................................................................................... 14, 25

*Atlantic Recording Corp. v. Project Playlist, Inc.,*
603 F.Supp.2d 690 (S.D.N.Y. 2009)....................................................................................... 3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007)....................................................................................................... 3

*Barenboim v. Starbucks Corp.,*
21 N.Y.3d 460 (2013) ............................................................................................................ 21

*Baur v. Veneman,*
352 F.3d 625 (2d Cir. 2003).................................................................................................... 22

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................................................... 14, 22, 25

*Bravo v. Established Burger One LLC,*
No. 12 Civ. 9044(CM), 2013 WL 5549495 (S.D.N.Y. Oct. 8, 2013) .................................... 23, 24

*Cal. Fed. Sav. & Loan Ass'n v. Guerra,*
479 U.S. 272 (1987)............................................................................................................... 10

*Carter v. Dutchess Cmty. Coll.,*
735 F.2d 8 (2d Cir. 1984)....................................................................................................... 23

*Carver v. City of New York,*
621 F.3d 221 (2d Cir. 2010)................................................................................................... 22

*CSX Transp., Inc. v. Easterwood,*
507 U.S. 658 (1993)............................................................................................................... 11

*Davis v. Four Seasons Hotel Ltd.,*
810 F. Supp. 2d 1145 (D. Haw. 2011) ................................................................................... 13

*DiFiore v. American Airlines, Inc.,*
646 F.3d 81 (1st Cir. 2011)..................................................................................................... 8, 9

*Herman v. RSR Sec. Servs. Ltd.,*
172 F.3d 132 (2d Cir. 1999).................................................................................................... 23

Page(s)

*Int'l Paper Co. v. Ouellete,*
479 U.S. 481 (1987) ................................................................................................ 11

*Irizarry v. Catsimatidis,*
722 F.3d 99 (2d Cir. 2013) ...................................................................................... 23

*Luiken v. Domino's Pizza, LLC,*
654 F. Supp. 973 (D. Minn. 2009) ..................................................................... 13, 14

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ................................................................................................ 22

*Martin v. Restaurant Assocs. Events Corp.,*
106 A.D.3d 785 (2d Dep't 2013) ............................................................................ 19

*McLaughlin v. Richland Shoe Co.,*
486 U.S. 128 (1988) ................................................................................................ 21

*Medtronic, Inc. v. Lohr,*
518 U.S. 470 (1996) ................................................................................................ 10

*Morales v. Trans World Airlines, Inc.,*
504 U.S. 374 (1992) .................................................................................................. 9

*Northwest, Inc. v. Ginsberg,*
134 S. Ct. 1422 (2014) .............................................................................................. 9

*Rowe v. New Hampshire Motor Transport Ass'n,*
552 U.S. 364 (2008) .................................................................................................. 9

*Samiento v. World Yacht Inc.,*
10 N.Y.3d 70 (2008) ..................................................................................... 17, 19, 20

*Sampson v. MediSys Health Network, Inc.,*
No. 10 Civ. 1342 (SJF)(ARL) 2012 WL 3027838 (E.D.N.Y. Jul. 24, 2012) .............. 24

*Schear v. Food Scope America, Inc.,*
297 F.R.D. 114 (S.D.N.Y. 2014) .............................................................................. 23

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.,*
659 F.3d 234 (2d Cir. 2011) ..................................................................................... 21

*Tracy v. NVR, Inc.,*
667 F.Supp.2d 244 (W.D.N.Y. 2009) ....................................................................... 25

*Vysovsky v. Glassman,*
No. 01 Civ. 2531(LMM), 2007 WL 3130562 (S.D.N.Y. Oct. 23, 2007) .................... 23

iv

Page(s)

*Young v. Cooper Cameron Corp.,*
586 F.3d 201 (2d Cir. 2009)............................................................................................21

*Zerilli-Edelglass v. New York City Transit Auth.,*
333 F.3d 74 (2d Cir. 2003)..............................................................................................21

Other Authorities

29 C.F.R. § 531.55(a)............................................................................................... 11, 13

29 U.S.C. § 201 ........................................................................................................... 1

29 U.S.C. § 207(a)(1).................................................................................................... 7

29 U.S.C. § 255 .......................................................................................................... 21

49 U.S.C. § 14501(c)(1).............................................................................................. 7, 8

49 U.S.C. App. § 1305(a)(1)......................................................................................... 9

Fed. R. Civ. P. 12(b)(6)............................................................................... 3, 14, 15, 20

Fed. R. Civ. P. 56....................................................................................................... 3, 7

IRS INTERIM GUIDANCE ON REV. RUL. 2012-18 ....................................................... 12, 13

IRS Tax Topic 761 ...................................................................................................... 12

New York Labor Law § 196-d (McKinney 2014)...................................................... *passim*

Tax Bulletin ST-320, Issued: February 23, 2012, Gratuities and Service Charges,
New York State Department of Taxation and Finance ........................................... 16, 17

U.S. Const. art. IV, cl. 2 ............................................................................................. 10

Defendants Fresh Direct, LLC, Jason Ackerman and David McInerney respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 56, for summary judgment, and alternatively, pursuant to Fed. R. Civ. P. 12(b)(6), with respect to all claims set forth in Plaintiffs' First Amended Complaint (the "Complaint").

## PRELIMINARY STATEMENT

Fresh Direct is in the business of delivering groceries ordered through its website by consumers throughout the Northeast. Plaintiffs, who are current or former employees of an affiliate of Fresh Direct, were all involved in some way in the trucking and delivery of Fresh Direct's products to its customers. Plaintiffs' lawsuit centers around a delivery fee that Fresh Direct charges to certain, but not all, of its customers in connection with their online orders, which ranges from $5.99 for delivery in Manhattan to $15.99 for delivery in the Hamptons (the "Delivery Fee"). Plaintiffs allege the Delivery Fee was actually a misappropriated gratuity, 100% of which should have been paid to them (and other similarly-situated delivery personnel) pursuant to New York Labor Law ("NYLL") § 196-d (McKinney 2014). They also claim that Fresh Direct's failure to include these fees in the calculation of their overtime rate of pay violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*

Plaintiffs' theory – that the expectation of a reasonable customer is that the Delivery Fee (despite its very name) is actually a gratuity under the NYLL – fails as a matter of law for the reasons set forth in Points I through III below. First, NYLL § 196-d does not apply here because it is preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAA"). Second, Plaintiffs' NYLL claim fails because it is preempted by the FLSA. Third, Plaintiffs fail to state a plausible claim for relief under the NYLL, relying as they do on conclusory and fact-deficient allegations. Indeed, it is plain from the face of the Complaint and the evidence from

Fresh Direct's website incorporated therein by reference that the Delivery Fee is not a gratuity and does not purport to be a gratuity under the NYLL. In fact, customers are expressly advised on Fresh Direct's website that "we do not have the technology to add tips to your order total" (Complaint ¶ 58).

As discussed in Point IV, Plaintiffs' claims against Ackerman and McInerney (the "Individual Defendants") should be dismissed because, again, they rely on conclusory and fact-deficient allegations insufficient to support a plausible claim that the Individual Defendants had "operational control" over Plaintiffs.

The FLSA and the NYLL are remedial statutes adopted to protect workers. Plaintiffs allege that one of the named Plaintiffs, who served in an entry-level delivery position, had an initial starting wage of $8.00 per hour and worked 50 hours per week, which translates to annual compensation of at least $22,000 per year.[1] (Complaint ¶¶ 43-44). Under Plaintiffs' theory, Fresh Direct should have been paying this entry-level employee more than five times that, or $119,500 per year.[2] That would not be remediation, but a windfall of enormous proportions – one that this Court should decline to confer for many reasons, including but not limited to those set forth in this Memorandum of Law.

---

[1] This amount is calculated by assuming that this Plaintiff worked 50 weeks per year, with the first 40 hours of his 50 hour week earning $8.00 per hour, and the remaining 10 hours per week at time-and-a-half of $12.00 per hour. Thus, this Plaintiff's annual compensation would equal: 50 weeks x (40 hours x $8.00 per hour + 10 hours x $12.00 per hour) = $22,000.

[2] Plaintiffs claim that delivery personnel "each make approximately 50 deliveries per day." (Complaint ¶ 50). Again assuming a 50 week work-year, 50 deliveries per day five days per week, a minimum delivery fee of $5.99 per delivery (for Manhattan) (Complaint ¶ 53), and a 50 hour work week, Plaintiffs should each have received an additional $97,500 per year, at least, excluding cash tips that may have also been paid by customers.

## STATEMENT OF FACTS[3]

### A.    Fresh Direct's Business

Fresh Direct is in the business of delivering products that one might purchase in a grocery store.[4]  It is based in Long Island City, Queens, and employs approximately 2,000 individuals (Complaint ¶¶ 10, 34).  Fresh Direct allows customers to place orders for delivery through its website and specializes in using technology to deliver those products directly to customers. When a customer places an order on Fresh Direct's website, items are carefully packaged to protect them during transit and preserve freshness, and the packages are then delivered directly to the customer's door via the Company's refrigerator/freezer trucks.[5]

As an online grocery store, Fresh Direct communicates with its customers extensively through its website.[6]  Customers browse Fresh Direct's website to shop for groceries, place orders over Fresh Direct's website, and receive order confirmations with details of their orders from Fresh Direct's website.  The website also provides comprehensive information to customers

---

[3] This Statement of Facts is based on Plaintiffs' Complaint and also on extrinsic facts to be considered in connection with that part of Defendants' motion that seeks summary judgment pursuant to Fed. R. Civ. P. 56.  (Point I, below). Because the Complaint extensively quotes from, and explicitly relies on, Fresh Direct's website (*see* Complaint ¶¶ 55, 58, 60), the totality of the website is properly considered on Defendants' 12(b)(6) motion to dismiss.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (on Rule 12(b)(6) motion, court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit"); *see also Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F.Supp.2d 690, 693 n. 3 (S.D.N.Y. 2009) (considering, on a motion to dismiss, facts drawn from court's own review of website where website incorporated by reference into complaint).

[4] *See* www.freshdirect.com (last visited June 2, 2014).

[5] *See* https://www.freshdirect.com/help/delivery_info.jsp (last visited June 2, 2014).

[6] *See* www.freshdirect.com (lasted visited June 2, 2014).

about its operations and policies, including through a webpage containing answers to

"Frequently Asked Questions" and through its "Customer Agreement."[7]

### B.    Fresh Direct's Delivery Operations

Fresh Direct's delivery operations are conducted through its corporate affiliate, UTF

Trucking Inc. ("UTF"), a motor carrier and/or motor private carrier registered with the United

States Department of Transportation ("DOT").  *See* Declaration of Teepoo Riaz dated June 2,

2014 ("Riaz Declaration") ¶ 2; Exs. 5-6.  UTF and Fresh Direct are both wholly owned, directly

or indirectly, by Fresh Direct Holdings, Inc.  *See* Riaz Declaration ¶ 2.  Plaintiffs and the putative

class – approximately 300 employees who "are involved in the direct delivery of food and

groceries to [Fresh Direct's] customers" (Complaint ¶ 34) – are (or were) all employees of UTF

(*see* Riaz Declaration ¶ 4; Exs. 1-4), who played roles – unspecified in the Complaint – in the

delivery chain from Fresh Direct's warehouse to its customers.

After a customer places an order on Fresh Direct's website, Fresh Direct delivers the

order in one of three ways, described in the Complaint as: (1) a two-person system where a

"driver" stays with the delivery truck and a "helper" brings the order to the customer's door

(¶ 35); (2) a one-person system where a single "driver" drives a delivery truck and delivers the

order to the customer (¶ 36); and (3) a "depot system" where a delivery truck parks at a fixed

location and "runners" unload the truck and deliver the order to the customer (¶ 37).

### C.    Fresh Direct's Delivery Fee

For online orders placed by some of its customers, Fresh Direct charges a fixed, flat-rate

delivery fee, which appears on customers' order confirmation.  The amount of the Delivery Fee

---

[7] *See* https://www.freshdirect.com/help/faq_home.jsp?page=faqHome (last visited June 2, 2014);
https://www.freshdirect.com/help/terms_of_service.jsp (lasted visited June 2, 2014).

is based solely on an order's geographic destination regardless of the amount of the order.[8]  For example, the fixed Delivery Fee is $5.99 for deliveries in Manhattan and $6.99 to Westchester County.

Not all customers pay a Delivery Fee for their individual online orders.  For example, (i) customers who purchase a "Deliverypass" on Fresh Direct's website receive unlimited deliveries for a fixed, taxable charge;[9] (ii) certain low-income customers paying through the Supplemental Nutrition Assistance Program ("SNAP") pay no Delivery Fee;[10] and (iii) customers who choose to pick up their orders from the Fresh Direct's Long Island City Facility pay no Delivery Fee.[11]

Certain customers may also elect to have deliveries made during "$2 Off Discounted Timeslots,"[12] which, as its name suggests, provides a $2.00 discount for deliveries made at off-peak hours.

When a customer does pay a Delivery Fee, the customer's online bill conspicuously marks the Delivery Fee as a "Taxable Item," and the customer pays tax on the fee.  For example, the $5.99 Delivery Fee for a delivery in Manhattan results in $0.53 of sales tax, which is included in a customer's total tax for that order.

Fresh Direct's website also includes a table that sets out the different Delivery Fees for different locations in New York, New Jersey and Connecticut.[13]  Directly below this table, the

---

[8] *See* https://www.freshdirect.com/help/delivery_info.jsp (last visited June 2, 2014).

[9] *See* https://www.freshdirect.com/help/faq_home.jsp?page=delivery_pass (last visited June 2, 2014).

[10] *See* https://www.freshdirect.com/category.jsp?catId=about_ebt&trk=home (last visited June 2, 2014).

[11] *See* https://www.freshdirect.com/help/delivery_lic_pickup.jsp (last visited June 2, 2014).

[12] *See* https://www.freshdirect.com/help/faq_home.jsp?page=home_delivery# home _delivery _eco  (last visited June 2, 2014).

[13] *See* https://www.freshdirect.com/help/delivery_info.jsp (last visited June 2, 2014).

website lays out the process and steps that go into delivery of its groceries, explaining the fee by noting that "[f]resh foods need extra care in handling, and we do all the right things to make sure your food gets to you in top shape. . . . We put the boxes straight into our own Fresh Direct refrigerator/freezer trucks, keeping everything cool and dry until it reaches you."[14]

### D.   Fresh Direct's Tipping Policy

Fresh Direct's tipping policy is also clearly displayed on its website. Indeed, as Plaintiffs note, Fresh Direct's website expressly states:

> [A]t this time *we do not have the technology to add tips to your order total*. If you feel that you've received exceptional service, please feel free to tip your delivery team . . . You are under no obligation to tip but have the option of providing a nominal tip if you feel you've received exceptional service. Fresh Direct delivery personnel are not permitted to solicit tips under any circumstances.

(Complaint ¶ 58) (emphasis added).

In the Complaint, Plaintiffs Ellison and Rousseve claim to have earned hourly wages ranging from $8.00 to $19.25.[15] (Complaint ¶¶ 41, 44, 49). Consistent with Fresh Direct's tipping policy, Plaintiffs also concede in the Complaint that they have received gratuities directly from customers in addition to their hourly wages. (Complaint ¶ 64).

### E.   Plaintiffs' Claims

Plaintiffs claim that, in violation of NYLL § 196-d, the Delivery Fee is actually a misappropriated gratuity that should have been paid to them and the putative class they intend to ask this Court to certify. (Complaint ¶¶ 2, 53-69, 89-95). Plaintiffs also assert a claim under the FLSA for unpaid overtime. (Complaint ¶¶ 1, 71-75, 78-88). They argue that the Delivery Fee is *not* a misappropriated gratuity, but rather a mandatory charge that should have been included in

---

[14] *Id.*

[15] The Complaint does not state Plaintiff Livingston's rate of pay.

6

their "regular rate of pay" for overtime purposes. Thus, Plaintiffs argue, by failing to include the Delivery Fee in their wages, Defendants failed to pay Plaintiffs' overtime at the proper rate required by 29 U.S.C. § 207(a)(1). Also, based solely upon the allegations that Defendants "had a policy and practice of refusing to pay overtime compensation" at the allegedly proper rate (Complaint ¶¶ 86-87) and that Defendants "knew or should have known that the alleged gratuities should have been included when calculating the overtime rate" (Complaint ¶ 74), Plaintiffs contend that the FLSA violation was "willful."

Finally, Plaintiffs allege that the Individual Defendants are liable under both the NYLL and FLSA as "employe[rs]" (Complaint ¶¶ 12, 14), who allegedly exert "operational control" (*id.* at ¶ 76) over Plaintiffs and the prospective class/collective action members.

Plaintiffs' claims should be dismissed for the reasons that follow.

## ARGUMENT

### I. SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING PLAINTIFFS' NYLL CLAIM, BECAUSE IT IS PREEMPTED BY THE FEDERAL AVIATION ADMINISTRATION AUTHORIZATION ACT.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, Plaintiffs simply cannot offer any material fact that would affect the outcome of their NYLL claim, because the state statute is preempted by federal law.

The premise of Plaintiffs' NYLL § 196-d claim is that the Delivery Fee is a misappropriated gratuity. Their claim fails because NYLL § 196-d is preempted by the FAAA (codified in relevant part at 49 U.S.C. § 14501(c)(1) (as amended)).

7

The FAAA establishes federal authority over certain transportation including that at issue here, restricting the rights of states to regulate in these areas. Despite its title, the FAAA's scope is not limited to transportation of goods by air, but rather provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

Fresh Direct's affiliate, UTF, which employed Plaintiffs and which conducts Fresh Direct's delivery operations, is a "motor carrier" and/or "motor private carrier" under this statute. (Riaz Declaration Ex. 5 (Unified Carrier Registration Receipt of UTF Trucking Inc., providing UTF's classification as "Motor Carrier")). NYLL § 196-d is a New York State statute "related to a price, route, or service of any motor carrier . . . or any motor private carrier." Therefore, the FAAA precludes enforcement of this state statute against Fresh Direct.

The First Circuit addressed a nearly identical claim and statutory preemption provision in *DiFiore v. American Airlines, Inc.*, 646 F.3d 81 (1st Cir. 2011). In that case, a group of curbside skycaps claimed that American Airlines misappropriated a $2 per bag service charge for luggage checked outside the terminal. They argued that the fee was actually a tip to which they, not the employer, were entitled under the Massachusetts Tip Law.[16]

The *DiFiore* jury found for the skycaps. The First Circuit reversed, holding that the Airline Deregulation Act ("ADA"), which, like the FAAA, "preempted state laws 'relating to

---

[16] The Massachusetts Tip Law requires that "service charges" – defined to include fees that "a patron or other consumer would reasonably expect to be given to a . . . service employee . . . in lieu of, or in addition to, a tip" – be given to service employees. *Id.* at 84. The plaintiffs in *DiFiore* argued that "passengers mistook the fee for a mandatory gratuity for the skycaps" (*id.* at 82), just as Plaintiffs in this case contend that Fresh Direct's Delivery Fee is understood by its customers to be a tip to which Plaintiffs are entitled.

rates, routes, or services'" (*id.* at 85),[17] precluded the skycaps' state law claim.  This holding

squares with the Supreme Court's federal preemption decision in *Morales v. Trans World*

*Airlines, Inc.*, 504 U.S. 374, 375 (1992) (guidelines adopted by state attorneys general restricting

airfare advertising are preempted by Section 1305(a)(1) of the ADA because, "[i]n light of the

breadth of § 1305(a)(1)'s 'relating to' phrase, a state enforcement action is pre-empted if it has a

connection with, or reference to airline 'rates, routes, or services'") (citations omitted); *see also*

*Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1430 (2014) (applying *Morales*'s broad definition

of "relate[d] to" as having "a connection with, or reference to").

     Reversing the *DiFiore* verdict, the First Circuit distinguished tips laws, which are

preempted, from anti-discrimination and retaliation laws, which some Circuits have held are not

preempted, as follows:

> The dividing line turns on the statutory language "related to a price, route, or
> service."  Importantly, the tips law does more than simply regulate the
> employment relationship between the skycaps and the airline; unlike the cited
> circuit cases, the tips law has a *direct connection* to air carrier prices and services
> and can fairly be said to regulate both.  As to the latter, American's conduct in
> arranging for transportation of bags at curbside into the airline terminal en route
> to the loading facilities is itself a part of the "service" referred to in the federal
> statute, and the airline's "price" includes charges for such ancillary services as
> well as the flight itself.

646 F.3d at 87 (emphasis in original).

     Similarly, if NYLL § 196-d were to be enforced against Fresh Direct, the consequences

would not simply relate to the employment relationship between Fresh Direct's affiliate, UTF,

and its delivery personnel, but would have a "direct connection" to the prices Fresh Direct

charges its customers and the services it provides as a motor carrier and/or motor private carrier.

---

[17] The Airline Deregulation Act and FAAA contain similar preemption provisions and courts cite precedent as to both "interchangeably." *DiFiore*, 646 F.3d at 86 n. 4; *see also Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370-71 (2008) (relying on ADA opinion to interpret FAAA preemption).

If Fresh Direct were compelled by NYLL § 196-d to pay the Delivery Fee to its employees –
eliminating an income stream which, as Plaintiffs note, Fresh Direct uses to "pay for various
administrative costs and business expenses" (Complaint ¶ 57) – such a result would invariably
affect the price that Fresh Direct is able to offer its customers and the manner in which it
provides its services to customers. Indeed, quintupling labor costs related to its deliveries would
have not just an effect, but an enormous effect. Thus, NYLL § 196-d "can fairly be said to
regulate both" price and service (*id.*), which the FAAA prohibits. It follows from this that
Plaintiffs' NYLL § 196-d claim must be dismissed because it is preempted, and Plaintiffs' FLSA
claim, which is necessarily dependent on their NYLL claim, must be dismissed as well.

## II.   PLAINTIFFS' NYLL § 196-D CLAIM IS PREEMPTED BY THE FLSA AND THEREFORE SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6).

NYLL § 196-d is also preempted by the FLSA as it frustrates the very purpose of FLSA
and IRS regulations with respect to mandatory charges. Indeed, FLSA and IRS regulations
require that a mandatory charge such as the Delivery Fee be included in employers' gross
receipts, that such a charge, if distributed to employees, must be incorporated in employees'
regular and overtime wage rates, and that the charge may not be distributed as a tip.

NYLL § 196-d frustrates these purposes by mandating opposite treatment and is,
therefore, preempted under the Supremacy Clause. U.S. Const. art. IV, cl. 2. Congressional
intent to preempt state law is either set forth expressly in the federal law, or implied in the
structure and purpose of the federal law. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996).
Implied preemption occurs where a state law "stands as an obstacle to the accomplishment and
execution of the full purposes and objectives of Congress." *Cal. Fed. Sav. & Loan Ass'n v.
Guerra*, 479 U.S. 272, 281 (1987). To determine whether a state law poses such an obstacle, "it
is not enough to say that the ultimate goal of both federal and state law" is the same; "[a] state

10

law also is pre-empted if it interferes with the methods by which the federal statute was designed

to reach th[at] goal." *Int'l Paper Co. v. Ouellete*, 479 U.S. 481, 494 (1987). "Where a state

statute conflicts with, or frustrates, federal law, the former must give way." *CSX Transp., Inc. v.

Easterwood*, 507 U.S. 658, 663 (1993).

The state law at issue here, NYLL § 196-d, "interferes with the methods by which the

federal statute was designed to reach [its] goal" by interfering with the method selected by

Congress in the FLSA and as echoed in IRS regulations concerning mandatory charges.

### A. Obligations Imposed by NYLL § 196-d Frustrate the Purpose of the FLSA and IRS Regulations.

The FLSA's Regulations provide at 29 C.F.R. § 531.55(a) that any "compulsory

charge for service" is *not* a gratuity, and, if such compulsory charges are distributed, they

are subject to withholding and other requirements for the distribution of wages, as

follows:

> A compulsory charge for service, such as 10 percent of the amount of the bill,
> imposed on a customer by an employer's establishment, is not a tip and, even if
> distributed by the employer to his employees, cannot be counted as a tip . . . . The
> amounts received from customers are the employer's property, not his, and do not
> constitute tip income to the employee.

Conversely, NYLL § 196-d provides that "gratuities" or "any charge purported to be a gratuity"

retained by an employer must be distributed to the employee, as follows:

> No employer or his agent or an officer or agent of any corporation, or any other
> person shall demand or accept, directly or indirectly, any part of the gratuities,
> received by an employee, or retain any part of a gratuity or of any charge
> purported to be a gratuity for an employee.

If Plaintiffs are correct that the Delivery Fee is a charge purporting to be a gratuity,

compliance with the state law would frustrate the purpose and intent of the federal law. The

FLSA provides that the Delivery Fee *must not* be considered a tip, *must* be included in the

11

employer's gross receipts, and *must* be incorporated into employees' wages rates if distributed.

Simultaneously, if Plaintiffs' reading of the law is correct, NYLL § 196-d provides that the

Delivery Fee *must* be considered a tip, *must not* be included in the employer's gross receipts, and

*must not* be used to pay employees' regular wages. Thus, NYLL § 196-d is in direct conflict

with, and therefore preempted by, the FLSA.

IRS policies and regulations underscore how NYLL § 196-d interferes with the FLSA

regulatory scheme. Indeed, the IRS requires that mandatory fees, when "added to a bill or fixed

by the employer that the customer must pay, when paid to an employer, will not constitute a tip

but rather constitute non-tip wages. These non-tip wages are subject to social security tax,

Medicare tax, and federal income tax withholding." IRS Tax Topic 761. In an internal

memorandum, the IRS informed its field examiners that they "*must* ensure that distributed

service charges are properly characterized as wages and not tips." IRS INTERIM GUIDANCE ON

REV. RUL. 2012-18 (emphasis added).[18] The Guidance also states without equivocation that

"[d]istributed service charges that have been characterized as tips should generally be

recharacterized [as wages] . . . ." *Id.* Thus, any employer who characterized a mandatory charge

as a tip would be violating IRS regulations, as well as the FLSA.

### B.   Limited Caselaw From Other Jurisdictions Addressing Conflict Preemption Is Inapposite.

The Second Circuit has not opined on whether NYLL § 196-d is preempted by the FLSA.

There are but two out-of-circuit opinions in which district courts have analyzed whether the

FLSA preempts state laws that require mandatory charges to be distributed to employees as

---

[18] Based on comments received from the public in response to the June 7, 2012 memorandum, the IRS postponed enforcement of its service charge policies until January 1, 2014, in order to grant employers additional time to ensure their compliance with federal law. *See* IRS Announcement 2012-50.

gratuities. Both hold no, but both fail to address the fundamental conflict between the FLSA and the state law at issue, particularly in light of the new IRS regulations.

In *Luiken v. Domino's Pizza, LLC*, 654 F. Supp. 2d 973 (D. Minn. 2009), the district court analyzed whether the FLSA preempted a state law similar in purpose and language to NYLL § 196-d. The court noted that "on their face, the statutes appear to be at odds," but then determined that the effect of the state law was simply to create a higher minimum wage, which is authorized by the FLSA. *Id.* at 981. *Luiken* is not controlling, of course, but it is also distinguishable. First, it was decided before the IRS issued Rule 2012-18 and thus contains no analysis of the conflict created by the IRS regulations. Second, the decision offers a single paragraph of legal analysis of the preemption issue that provides little or no guidance. Third, the decision relies upon the fiction that a single sum of money can somehow be a gratuity (paid in full to employees and not taxable to the employer), and income to the employer (with the employer paying corporate income tax on the sum), and wages (from which all applicable taxes and withholdings must be taken) all at the same time. *Id.* The IRS guidance directing its examiners to "*recharacteriz*e" service charges paid makes this legal fiction unsustainable.

In *Davis v. Four Seasons Hotel Ltd.*, 810 F. Supp. 2d 1145 (D. Haw. 2011), the court analyzed whether the FLSA preempted a state law that required employers to distribute mandatory charges as tip income unless the employer disclosed that it would not do so. *Id.* at 1155. The court found no preemption because "[t]he FLSA does not prohibit service charges from being distributed to employees as tip income." *Id.* This is just wrong, because the FLSA does expressly prohibit mandatory charges from being distributed as tip income. *See* 29 C.F.R. § 531.55(a) ("A compulsory charge for service . . . is not a tip and, even if distributed by the

employer to his employees, cannot be counted as a tip"). And as with *Luiken*, the opinion preceded the new IRS regulations.

In sum, the federal government has set forth its intent to regulate mandatory charges as taxable income to the employer and as wages – not tips – when distributed to employees. By prohibiting employers from including mandatory charges in their gross receipts and by requiring the mandatory charges to be distributed as tips – not wages – NYLL § 196-d frustrates the purpose and intent of the federal regulatory scheme and is, therefore, preempted.

## III.   PLAINTIFFS' NYLL CLAIM ALSO FAILS TO STATE A CLAIM FOR RELIEF AND SHOULD THEREFORE BE DISMISSED PURSUANT TO RULE 12(b)(6).

### A.   Rule 12(b)(6) Standard for Dismissal

Rule 12(b)(6) is governed by the "plausibility standard." To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard is met when the plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555, 557 (a pleading that merely offers "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s] . . . without some further factual enhancement").

As shown below, Plaintiffs' central premise – that the Delivery Fee is a misappropriated gratuity – fails to meet this plausibility standard. Not only does their Complaint rely almost

exclusively on conclusory allegations and implausible inferences, but the few facts they actually do allege show that the Delivery Fee is not a gratuity.[19]

**B. Plaintiffs' Claim for Relief Under NYLL § 196-d Should Be Dismissed Because Fresh Direct's Delivery Fee Is Not A Gratuity And No Reasonable Customer Could View It As One.**

Plaintiffs' NYLL claim should be dismissed because the Delivery Fee is not a gratuity, nor could it be construed as a gratuity. Under NYLL § 196-d, an employer may not retain any part of a "gratuity" for an employee or "any charge purported to be a gratuity."[20]  The Delivery Fee is neither.

1.  Fresh Direct's Delivery Fee Is Not A Gratuity.

Plaintiffs' own factual allegations show that the Delivery Fee is not a gratuity payable to Fresh Direct's delivery personnel.

First, the plain language of the term "delivery fee" – as opposed to a vague term like "service charge" (discussed below) – discloses its purpose as a shipping and handling cost to be applied toward Fresh Direct's delivery operations. As Plaintiffs accurately note: "Defendants use the delivery charges to, upon information and belief, pay for various administrative costs and business expenses," (Complaint ¶ 57), not as a way to enhance the compensation of their delivery personnel.

---

[19] Fresh Direct does not, of course, offer or refer to extrinsic evidence to support this Rule 12(b)(6) motion, limiting the factual universe set forth in this Point to allegations that appear in the Complaint and the web-based information incorporated therein. But these facts are not the entire universe by a long shot. Should this case proceed beyond this motion and into merits-based discovery, substantial additional evidence will demonstrate *a fortiori* that the Delivery Fee is not and cannot be considered a gratuity.

[20] Section 196-d states, in relevant part, "Gratuities. No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. . . . Nothing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter nor as affecting practices in connection with banquets and other special functions where a fixed percentage of the patron's bill is added for gratuities which are distributed to employees, nor to the sharing of tips by a waiter with a busboy or similar employee."

Second, unlike a gratuity, which is generally paid at the customer's discretion for good service, the Delivery Fee: (1) is mandatory; (2) is paid by some (but not all) of Fresh Direct's customers; (3) is not tied to the quality of the work performed; and (4) is not affected by the relationship between the customer and the deliverer. Indeed, for those customers who pay the Delivery Fee, the amount is fixed based on the customer's location and does not vary, regardless of whether the size of the customer's order is $30, $300, or $3,000. Thus, the $5.99 Delivery Fee in Manhattan is exactly the same for a delivery of a single, light box to a customer's doorman at the front entrance of an apartment building as it would be for the delivery of twenty heavy boxes to a fourth-floor walk-up next door. Gratuities, on the other hand, are generally based on a worker's performance and reflect a percentage of the underlying charge, not a flat fee.

Third, Fresh Direct taxes its Delivery Fee, which further confirms for the customer that it is not a gratuity. Customers' online bills expressly mark the Delivery Fee as a "Taxable Item," and the tax appears as a line item. For example, the $5.99 Delivery Fee for a delivery in Manhattan results in $0.53 of sales tax, which is included in a customer's total tax on the bill.

Gratuities, by contrast, are not subject to sales tax, whether they are "voluntary gratuities" or "mandatory gratuities" that are clearly and separately marked as such and paid to the service provider. *See* Tax Bulletin ST-320, Issued: February 23, 2012, *Gratuities and Service Charges*, New York State Department of Taxation and Finance.[21] If the Delivery Fee were a gratuity, it

---

[21] This tax bulletin provides, in relevant part, as follows: "For sales tax purposes, the term *gratuity* means money a customer gives a wait person, server, housekeeper, or other person as an expression of appreciation for service rendered, such as a tip at a restaurant or bar. *Voluntary gratuities* that a customer leaves are not taxable. *Mandatory gratuities* are different because they are automatically added onto the bill given to the customer. However, a mandatory gratuity is not taxable if **all** of these conditions are met:

- the charge is shown separately on the bill;
- the charge is identified as a *gratuity*; and
- the business gives the entire separately stated gratuity amount to its employees.

would not be subject to sales tax. And any Fresh Direct customer who has paid a bill in a restaurant knows that the restaurant is not charging him or her sales tax on that tip.

        2.     Fresh Direct's Delivery Fee Does Not "Purport[] To Be A Gratuity."

The Delivery Fee is not a gratuity; nor it is "a charge purported to be a gratuity" under NYLL § 196-d. The standard for determining whether a charge is a "charge purported to be a gratuity" is based on the representations of the employer (in this case, Fresh Direct) to its customers and the expectations of a reasonable customer. The New York Court of Appeals has found that a charge may be a "charge purported to be a gratuity" within the meaning of the statute "when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees." *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81 (2008). Whether such a charge purports to be a gratuity "should be weighed against the expectation of the reasonable customer." *Id.* at 79. Applying this standard here, Plaintiffs' factual allegations establish that the Delivery Fee is not a "charge purported to be a gratuity" under NYLL § 196-d for the reasons set forth above in subpoint B(1), and for the reasons that follow.

First, based solely on allegations from the Complaint and Fresh Direct's website referenced in the Complaint, Fresh Direct's representations to its customers through its website make it clear that the Delivery Fee is not a gratuity. Fresh Direct tells its customers that a tip cannot be added electronically, and that, in contrast to the Delivery Fee, which is mandatory, tipping is optional:

> [A]t this time we do not have the technology to add tips to your order total. If you feel that you've received exceptional service, please feel free to tip your delivery

---

If any of these conditions is not met, the mandatory gratuity is taxable, along with the rest of the bill. Service charges or other charges not specifically listed as gratuities on a bill or invoice are subject to sales tax." Tax Bulletin ST-320 (emphasis in original).

> team. . . . You are under no obligation to tip but have the option of providing a
> nominal tip if you feel you've received exceptional service.  Fresh Direct delivery
> personnel are not permitted to solicit tips under any circumstances.

(Complaint ¶ 58)[22].

Thus, far from representing or allowing customers to believe that the mandatory Delivery

Fee is a tip, Fresh Direct expressly tells its customers that tips cannot be included in the online

order.[23]

Moreover, a reasonable "Deliverypass" or SNAP customer, who does not pay any

Delivery Fee, or a customer who selects "$2 Off Discounted Timeslots," would not reasonably

think these promotions were waivers of employees' gratuities rather than the elimination or

reduction of shipping and handling charges at the expense of the Company.

Fresh Direct's website also discloses the real purpose of the Delivery Fee by detailing the

process for delivery of fresh food.  Indeed, on the same page setting forth the Delivery Fee

amounts, Fresh Direct's website explains that "[f]resh foods need extra care in handling, and we

do all the right things to make sure your food gets to you in top shape . . . . We put the boxes

straight into our own Fresh Direct refrigerator/freezer trucks, keeping everything cool and dry

until it reaches you."[24]  This disclosure tells customers that the delivery costs money, including

costs such as boxing orders and upkeep of trucks, which the Delivery Fee is meant to offset.

Plaintiffs themselves were able to infer what it is that the Delivery Fee is used for, as

demonstrated by their allegation "upon information and belief" that it is used to "pay various

---

[22] *See also* https://www.freshdirect.com/help/faq_home_pop.jsp?page=delivery_feedback (last visited June 2, 2014).

[23] The Customer Agreement also explicitly states that delivery personnel are allowed to accept tips.  *See* https://www.freshdirect.com/help/terms_of_service.jsp (last visited June 2, 2014).

[24] *See* https://www.freshdirect.com/help/delivery_info.jsp (last visited June 2, 2014).

administrative costs and business expenses" (Complaint ¶ 57). Yet Plaintiffs ask this Court to presume that a reasonable customer somehow would not reach that very same conclusion.

Second, in addition to disclosure to Fresh Direct's customers, as noted above, the Delivery Fee is marked as a "Taxable Item" on customers' bills. Customers, of course, know that when they include a tip on a restaurant bill or give a cash tip to a parking attendant, they do not pay sales tax on that gratuity.

Third, this case is distinguishable from other cases applying NYLL § 196-d based on the language used to describe the charges at issue. For example, in *World Yacht* and *Martin v. Restaurant Assocs. Events Corp.*, 106 A.D.3d 785 (2d Dep't 2013) – which involve banquet charges, not Delivery Fees – the charges at issue were percentage-based "service charges," not a flat-dollar fee. *Martin*, 106 A.D.3d at 786; *World Yacht*, 10 N.Y.3d at 75. The New York State Department of Labor has noted that "service charge" is inherently confusing in the banquet context. *See* March 11, 2010 New York State Dep't of Labor Opinion Letter RO-09-0181. The phrase "service charge" by its terms implies a "service" element. By sharp contrast, Fresh Direct's use of the phrase "delivery fee" implies that it is a shipping and handling charge unrelated to service.

For their part, Plaintiffs offer a series of conclusory allegations, implausible inferences, and non-specific anecdotes to support their theory that NYLL § 196-d applies to Fresh Direct's Delivery Fee. The sum total of their allegations are as follows:

- The conclusory allegation that Fresh Direct "misled" its customers into believing the Delivery Fee was a gratuity (Complaint ¶ 61) and that "Fresh Direct's website would have the reasonable customer believe that the 'delivery charge' is a gratuity" (*id.* at ¶ 60). There is no allegation that Fresh Direct ever told any customer the fee was a tip, or otherwise misrepresented the fee, and Fresh Direct's website demonstrates just the opposite – that Fresh Direct was clear with customers that tipping was optional and that tips were not, and could not be, included in their online payments;

19

- The allegation that the Delivery Fee purports to be a gratuity because Fresh Direct also charges a "fuel surcharge." (*Id.* at ¶¶ 54, 55). This leap of logic rests on the unreasonable premise that a reasonable customer would think that the cost of fuel is the *only* cost for Fresh Direct to run its delivery operations, so that the Delivery Fee must be a tip. No reasonable customer could come to this conclusion;

- Plaintiffs' allegation that they seldom receive tips (at ¶¶ 63, 64), and that Plaintiffs may not ask for tips (*id.* at ¶¶ 58, 59). Assuming these claims to be true for present purposes only, they actually support Defendants' position on this motion. Plaintiffs' allegations are consistent with Fresh Direct's tipping policy as explained on its website. Plaintiffs' further allegation that customers infrequently tip "because they believed the automatic delivery charge was [Plaintiffs'] gratuity" (¶ 65) is conclusory and insufficient to state a plausible claim, and in any event, the claim ignores the disclosures expressly provided to customers about Fresh Direct's tipping policy;

- Plaintiffs' allegation (at ¶ 62) that "[o]n numerous occasions, Fresh Direct customers have told Plaintiffs . . . they thought the 'delivery charge' was their gratuity," yet Plaintiffs do not specify a single instance of this, or identify a customer, a time, a place, or anything else; and

- Plaintiffs' contention that customers believe the fee is a gratuity because Fresh Direct does not explain the purpose of the Delivery Fee to its customers (*id.* at ¶ 55). This bald assertion simply ignores the many pieces of information Fresh Direct customers have at hand, all as provided by Fresh Direct, as described above.

Thus, Plaintiffs' NYLL claim should be dismissed because their conclusory allegations do not contain "sufficient factual matter" to meet Rule 12(b)(6)'s "plausibility standard." On the contrary, the facts offered by Plaintiffs show that Fresh Direct's delivery charge is not a gratuity and does not purport to be a gratuity. For this Court to hold otherwise would not only ignore the indisputable facts, but it would expand the holdings from cases following *World Yacht* and governing "service charges" in the hospitality industry to any industry that charges delivery or shipping and handling fees, from grocery stores to any online retailers that deliver their own products, with the enormous consequences to the economic viability of such industries that Plaintiffs would have this Court impose upon the Defendants in this case.[25]

---

[25] Should the Court dismiss Plaintiffs' NYLL § 196-d claim, Plaintiffs' FLSA claim – which is necessarily dependent on their NYLL claim – must also be dismissed. Whether the FLSA claim is dismissed, or not, Plaintiffs'

**C.    Even If The Delivery Fee Were A Gratuity, Plaintiffs Would Not Be Entitled To It Because They Fail To Allege Entitlement to Share In Any Tips.**

In order for an employer to lawfully distribute gratuities to employees, every receiving employee must be "tip eligible" under NYLL § 196-d. Therefore, even if the Delivery Fee were a tip, Plaintiffs' NYLL claim must nevertheless be dismissed, because Plaintiffs do not allege that they are "tip eligible."

"[E]mployees who do not perform direct customer service" are not tip eligible. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011) ("By its plain terms, § 196-d bars employers from requiring tipped employees to share tips with employees who do not perform direct customer service . . ."); *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 471-72, 473 (2013) (employers may not require tipped employees to share their tips with employees not "ordinarily engaged in personal customer service").

Plaintiffs' Complaint does not allege that they "perform direct customer service." Indeed, Plaintiffs concede that not all "delivery personnel" provide direct customer service or otherwise interact with (or are even viewable by) Fresh Direct customers (Complaint ¶ 35 ("a driver may sometimes stay with the delivery truck . . . while the helper physically brings the food and groceries to the customer's door")). Nor do Plaintiffs allege what roles they each actually

---

requests for a three-year statute of limitations under the FLSA and for equitable tolling of their claims should be dismissed, as the Complaint contains no facts other than bare, conclusory allegations to support these requests. The FLSA's two year statute of limitations applies unless the Defendants are shown to have ignored it willfully. *See* 29 U.S.C. § 255. A violation is deemed "willful" where the employer "'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act," *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Plaintiffs here, however, allege no facts to support their assertion that Fresh Direct's FLSA violation was "willful" other than their conclusory allegation that Defendants had a "policy and practice of refusing to pay overtime . . . at the proper rate" (Complaint ¶ 86). Plaintiffs have also failed to allege any facts supporting their request for relief from the FLSA's two-year statute of limitation based on the doctrine of "equitable tolling." (Complaint ¶ 87). Indeed, equitable tolling is an extraordinary measure, "only appropriate in . . . rare and exceptional circumstance[s]," *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) ( citations and quotation marks omitted), and is generally reserved for extraordinary cases, such as where a plaintiff was unaware of his or her cause of action due to fraudulent concealment of facts by a defendant. *Id.* Here, Plaintiffs have pleaded no facts that would entitle them to equitable tolling, and have failed even to state a basis on which the Court could grant it.

performed at Fresh Direct. Instead, the Complaint generically describes each Plaintiff as "delivery personnel." (*Id.* at ¶¶ 39, 42, 45, 47). The Complaint is silent as to whether Plaintiffs drove trucks and never delivered boxes to customers, or whether they oversaw trucks parked using the "depot system" (again with no customer interaction), or whether Plaintiffs actually delivered boxes to customers and saw them face to face. Absent any specific allegations as to Plaintiffs' actual performance (or failure to perform) "direct customer service," Plaintiffs' claim for tips must be dismissed.[26]

## IV.   PLAINTIFFS HAVE FAILED TO STATE A PLAUSIBLE CLAIM AGAINST THE INDIVIDUAL DEFENDANTS BECAUSE THEIR ALLEGATIONS MERELY RESTATE THE APPLICABLE LEGAL STANDARD AND FAIL TO PLEAD ANY FACTS THAT THE INDIVIDUAL DEFENDANTS HAD "OPERATIONAL CONTROL" OVER THE PUTATIVE CLASS.

Plaintiffs' claims against Defendants Ackerman and McInerney should be dismissed, because they fail the "plausibility standard." What they offer are thinly-veiled *pro forma* recitations of the applicable legal standard, often made solely "upon information and belief" and devoid of any supporting factual allegations. Such allegations are insufficient as a matter of law to state a claim against the Individual Defendants. *See Twombly*, 550 U.S. at 555 (for pleading purposes, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

---

[26] Because Plaintiffs have failed to allege that they are tip eligible under the NYLL, their Complaint also fails to demonstrate Plaintiffs' standing "for each claim and form of relief sought." *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n. 15 (2d Cir. 2003)). Article III standing requires a showing that the Plaintiff "[1] suffered an injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical; [2] that there was a causal connection between the injury and the conduct complained of; and [3] that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). Because Plaintiffs have not alleged that they are tip eligible, they cannot demonstrate any entitlement to a portion of the delivery fee from Fresh Direct under *any* circumstances. Thus, they have not alleged any injury-in-fact.

Under both the FLSA and NYLL, a plaintiff may bring suit against an individual where the individual is an "employer" under those statutes. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (FLSA); *Vysovsky v. Glassman*, No. 01 Civ. 2531(LMM), 2007 WL 3130562, *16-17 (S.D.N.Y. Oct. 23, 2007) (NYLL). Courts apply the "economic reality" test to determine whether the alleged employer possessed the power to control the workers in question, with a view to the "economic reality" of the situation. The factors relevant to the "economic reality" test include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Herman*, 172 F.3d at 139 (applying "economic reality" standard to FLSA) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984); *see also Schear v. Food Scope America, Inc.*, 297 F.R.D. 114, 134 (S.D.N.Y. 2014) (applying "economic reality" standard to NYLL). Where the alleged employer is an individual, courts examine whether such individual possesses operational control over the plaintiff's employment. *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). To survive a motion to dismiss, a plaintiff must allege more than "mere boilerplate allegations that an individual meets the various prongs of the economic reality test." *Bravo v. Established Burger One LLC*, No. 12 Civ. 9044(CM), 2013 WL 5549495 (S.D.N.Y. Oct. 8, 2013) (granting motion to dismiss individual defendants).

Plaintiffs' allegations against the Individual Defendants simply parrot the "economic reality" standard set forth in *Herman*:

- "Upon information and belief, [the Individual] Defendant[s] own[], operate[] and/or control[] the day-to-day operations and management of Defendant Fresh Direct and jointly employed Plaintiffs . . . and other similarly situated employees at all relevant times." ( Complaint ¶¶ 12, 14);

23

- "Each Defendant, either directly or indirectly, has hired and fired Plaintiffs . . . supervised and controlled their work schedule and conditions of employment, determined the rate and method of their payment, and kept at least some records regarding their employment." (*Id.* at ¶ 16);

- "Defendants Ackerman and McInerney co-founded Fresh Direct in 1999, which is based in Long Island City, New York." (*Id.* at ¶ 31);

- "Defendant Ackerman is the C.E.O. of Fresh Direct, a member of the Board of Directors, and has helped to direct Fresh Direct's growth strategy." (*Id.* at ¶ 32);

- "Defendants Ackerman and McInerney exercised operational control over Plaintiffs . . . through their role within Fresh Direct as they, upon information and belief, made decisions that directly affect the delivery personnel's employment conditions, including the application of the delivery charge." (*Id.* at ¶ 76); and

- "Defendants Ackerman and McInerney, upon information and belief, make the ultimate decisions as to how Fresh Direct is operated, including the compensation policies for Plaintiffs . . . and the Rule 23 Class and Collective Action Members." (*Id.* at ¶ 77).

These allegations are insufficient to state a claim for relief against the Individual Defendants. For example, in *Bravo*, the court held that allegations that individual defendants "exercised control over the terms and conditions of Plaintiffs' employment by exercising power to fire and hire, determining rate and method of pay, determining employee work schedules, maintaining employee records, and otherwise affective the quality of employment," and that they were "Principals" of the corporate defendants, were conclusory and insufficient to satisfy the plaintiffs' pleading requirements under the economic realities test. 2013 WL 5549495, at *6.

Plaintiffs' allegations here are precisely the type of boilerplate, conclusory allegations that the *Bravo* court held were insufficient to survive a motion to dismiss. The Complaint is silent as to when, where, or how the Individual Defendants exercised, or even possessed, such operational control. Nor do Plaintiffs allege any direct contact with the Individual Defendants. *See Sampson v. MediSys Health Network, Inc.*, No. 10 Civ. 1342(SJF)(ARL) 2012 WL 3027838, at *5 (E.D.N.Y. Jul. 24, 2012) (claims dismissed where plaintiffs did not allege defendants ever

24

had direct contact with them), which is no wonder, given that Fresh Direct employs thousands of individuals and hundreds of delivery personnel. (Complaint ¶ 34). Such boilerplate allegations, particularly about such a large and complex organization, do not state a cause of action. *See Tracy v. NVR, Inc.*, 667 F.Supp.2d 244, 247 (W.D.N.Y. 2009) (denying leave to amend where amended complaint contained only boilerplate allegations reciting the prongs of the economic reality test, with no supporting details other than defendant's job title). Indeed, they are precisely the kinds of allegations that may not be considered in assessing plausibility under the Supreme Court's holdings in *Iqbal* and *Twombly*. Accordingly, these claims, too, should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their motion be granted in its entirety dismissing the Complaint, and that the Court grant such other and further relief as it deems just and proper.

Respectfully submitted,

LITTLER MENDELSON, P.C.                   ALLEGAERT BERGER & VOGEL LLP

By: _____/s/David M. Wirtz_____      By: _____/s/David A. Berger_____
　　　David M. Wirtz                           David A. Berger
　　　Sarah E. Moss                            Louis A. Craco, Jr.
　　　900 Third Avenue                         Kevin L. MacMillan
　　　New York, New York 10022                 Lauren J. Pincus
　　　(212) 583-9600                           111 Broadway, 20th Floor
　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10006
　　　　　　　　　　　　　　　　　　　　　　　(212) 571-0550

*Attorneys for Defendants Fresh Direct, LLC, Jason Ackerman and David McInerney*