UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x   14 Civ. 1909 (VEC) (GWG)

WILLARD OWENS, JEREMY ELLISON,   :
THOMAS LIVINGSTON, JAMES ROUSSEVE, :
BASILLE NEWMAN, ZEBEDEE POUNCEY, :
TONY TYLER, Individually and on Behalf of All : **ORAL ARGUMENT REQUESTED**
Other Persons Similarly Situated,
                 :
             :
         Plaintiffs,  :
             :
    - against -     :
             :
FRESH   DIRECT   LLC,   FRESH   DIRECT :
HOLDINGS, INC., U.T.F. TRUCKING, INC., :
JASON   ACKERMAN,   and   DAVID :
MCINERNEY, Jointly and Severally,   :
             :
       Defendants.  :
--------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION,
PURSUANT TO FED. R. CIV. P. 56, FOR SUMMARY JUDGMENT, AND
ALTERNATIVELY, FOR DISMISSAL, PURSUANT TO FED. R. CIV. P. 12(b)(6)**

David M. Wirtz       David A. Berger
Sarah E. Moss       Louis A. Craco, Jr.
LITTLER MENDELSON, P.C.   Kevin L. MacMillan
900 Third Avenue      Lauren J. Pincus
New York, New York 10022   ALLEGAERT BERGER & VOGEL LLP
(212) 583-9600       111 Broadway, 20th Floor
             New York, New York 10006
             (212) 571-0550

*Attorneys for Defendants Fresh Direct, LLC, Fresh Direct Holdings, Inc.,*
*U.T.F. Trucking, Inc., Jason Ackerman and David McInerney*

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ...................................................................... 2

    A.    FreshDirect's Business................................................................. 2

    B.    FreshDirect's Delivery Fee ........................................................ 2

    C.    FreshDirect's Tipping Policy ..................................................... 3

    D.    The Collective Bargaining Agreement ...................................... 3

ARGUMENT ........................................................................................ 4

I.  PLAINTIFFS' NYLL CLAIM IS PREEMPTED BY THE FAAAA ..................................... 4

II. PLAINTIFFS' NYLL CLAIM IS PREEMPTED THE LMRA ................................................ 6

    A.    The Legal Standard for § 301 Preemption ............................... 7

    B.    Plaintiffs' NYLL § 196-d claim is preempted by § 301 because their own allegations would require this Court to undertake substantial interpretation of the CBAs, which § 301 prohibits.................................................. 8

    C.    Plaintiffs' state law claim is also preempted because the ambiguity of the term "tips" in the CBA would require the Court to inquire impermissibly into the meaning of the CBAs.................................................. 9

III. SECTION 196-D IS PREEMPTED BY THE FLSA ITSELF ............................................ 13

    A.    Obligations imposed by § 196-d conflict with FLSA and IRS Regulations........ 14

IV. PLAINTIFFS' NYLL CLAIM FAILS TO STATE A CLAIM FOR RELIEF .................... 16

    A.    FreshDirect's Delivery Fee Is Not A Gratuity ..................................... 16

    B.    FreshDirect's Delivery Fee Does Not "Purport[] To Be A Gratuity." ................ 17

V.  PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MCINERNEY .............................. 22

CONCLUSION.................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................16

*Atlantic Recording Corp. v. Project Playlist, Inc.*,
    603 F.Supp.2d 690 (S.D.N.Y. 2009) ........................................................................2

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) (on Rule 12(b)(6) ..........................................................2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................16

*Bravo v. Established Burger One LLC*,
    No. 12 Civ. 9044(CM), 2013 WL 5549495 (S.D.N.Y. Oct. 8, 2013) .........22, 23, 24

*Cal. Fed. Sav. & Loan Ass'n v. Guerra*,
    479 U.S. 272 (1987) .................................................................................................13

*Caterpillar v. Williams*,
    482 U.S. 386 (1987) ...................................................................................................7

*CSX Transp., Inc. v. Easterwood*,
    507 U.S. 658 (1993) .................................................................................................14

*Davis v. Four Seasons Hotel Ltd.*,
    810 F. Supp. 2d 1145 (D. Haw. 2011) .....................................................................16

*Sokolski v. Trans Union Corp.*,
    53 F.Supp.2d 307 (E.D.N.Y. 1999) .........................................................................20

*DiFiore v. American Airlines, Inc.*,
    646 F.3d 81 (1st Cir. 2011) ...............................................................................4, 5, 6

*Dilts v. Penske Logistics, LLC*,
    No. 12-55705, 2014 WL 4401243 (9th Cir. Sept. 8, 2014) ......................................5

*Haggins v. Verizon New Eng., Inc.*,
    648 F.3d 50 (1st Cir. 2011) ......................................................................................12

*Hawaiian Airlines, Inc. v. Norris*,
    512 U.S. 246 .............................................................................................................7

*Herman v. RSR Sec. Servs. Ltd.*,
    172 F.3d 132 (2d Cir. 1999) ....................................................................................22

*Hoops v. Keyspan Energy*,
  822 F. Supp. 2d 301 (E.D.N.Y. 2011) ..................................................................13

*In re Weyerhaeuser Company and Pace Local 162*,
  114 LA 1477 (Neas 2000)......................................................................................11

*Int'l Paper Co. v. Ouellete*,
  479 U.S. 481 (1987)...............................................................................................14

*Irizarry v. Catsimatidis*,
  722 F.3d 99 (2d Cir. 2013).....................................................................................22

*Johnson v. D.M. Rothman Co.*,
  861 F. Supp. 2d 326 (S.D.N.Y. 2012) .....................................................................9

*Kaye v. Orange Reg'l Med. Ctr.*,
  2013 U.S. Dist. LEXIS 141065 (S.D.N.Y. Sept. 30, 2013)...............................9, 13

*Luiken v. Domino's Pizza*,
  LLC, 654 F. Supp. 2d 973 (D. Minn. 2009) ......................................................15, 16

*Luiken v. Domino's Pizza, LLC*,
  705 F.3d 370 (8th Cir. 2013) .................................................................................20

*Martin v. Restaurant Assocs. Events Corp.*,
  106 A.D.3d 785 (2d Dep't 2013) ...........................................................................18

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996)...............................................................................................13

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992).................................................................................................5

*Northwest, Inc. v. Ginsberg*,
  134 S. Ct. 1422 (2014).............................................................................................5

*Allis-Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985)............................................................................................8, 11

*Rowe v. New Hampshire Motor Transport Ass'n*,
  552 U.S. 364 (2008).................................................................................................5

*Samiento v. World Yacht Inc.*,
  10 N.Y.3d 70 (2008)..........................................................................................17, 18

*Sampson v. MediSys Health Network, Inc.*,
  No. 10 Civ. 1342(SJF)(ARL) 2012 WL 3027838 (E.D.N.Y. Jul. 24, 2012).........23

*Schroeder v. Trans World Airlines, Inc.*,
   702 F.2d 189 (9th Cir. 1983) ........................................................................9

*Smith v. Evening News Ass'n*,
   371 U.S. 195 (1962) ....................................................................................8

*Tamburino v. Madison Sq. Garden L.P.*,
   980 N.Y.S.2d 83 (1stDep't 2014) .............................................................12

*Teamsters Local v. Lucas Flour Co.*,
   369 U.S. 95 (1962) ..................................................................................7, 8

*Textile Workers Union v. Lincoln Mills*,
   353 U.S. 448 (1957) ....................................................................................7

*Tracy v. NVR, Inc.*,
   667 F.Supp.2d 244 (W.D.N.Y. 2009) ......................................................23

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960) ..................................................................................12

*Vera v. Saks & Co.*,
   335 F.3d 109 (2d Cir. 2003) ........................................................................8

*Vysovsky v. Glassman*,
   No. 01 Civ. 2531(LMM), 2007 WL 3130562 (S.D.N.Y. Oct. 23, 2007) ............22

## STATUTES

29 U.S.C. § 185(a) ......................................................................................7

49 U.S.C. § 14501(c)(1) ...........................................................................1, 4

Defendants Fresh Direct, LLC ("FreshDirect"), FreshDirect Holdings, Inc. ("Holdings"), U.T.F. Trucking, Inc. ("UTF"), Jason Ackerman ("Ackerman") and David McInerney ("McInerney") submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 56 for summary judgment, and alternatively, pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal as to all claims in Plaintiffs' Second Amended Complaint.[1]

## I.    PRELIMINARY STATEMENT

Plaintiffs are current or former employees of UTF, a FreshDirect affiliate responsible for the trucking and delivery of groceries to FreshDirect customers ordering through FreshDirect's website.  Plaintiffs allege that a delivery fee charged to some FreshDirect customers (the "Delivery Fee") was a gratuity that should have been paid to them and included in calculating their overtime rate of pay as required by New York Labor Law ("NYLL") § 196-d (McKinney 2014) and the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*  Should Plaintiffs prevail on their claims, the results would be striking – their annual pay would be increased by as much as five-fold.  As shown below, however, Plaintiffs' claims fail as a matter of law for at least five reasons:

- First, Plaintiff's NYLL claim  is preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") (codified in relevant part at 49 U.S.C. § 14501(c)(1) (as amended));

- Second, Plaintiffs' NYLL claim is preempted by the Labor Management Relations Act ("LMRA");

- Third, Plaintiffs' NYLL claim  is preempted by the FLSA itself;

- Fourth, Plaintiffs fail to state a plausible claim under the NYLL, as they rely on conclusory, fact-deficient allegations, and the few specific facts that they do plead (taken together with relevant content of FreshDirect's website) undercut any possible notion that the Delivery Fee is or purports to be a gratuity; and

---

[1] Citations herein are to the Second Amended Complaint ("SAC"), the Declaration of Teepoo Riaz, Esq., dated September 12, 2014 ("Riaz Dec."), the Declaration of Adrian Williams, dated September 11, 2014 ("Williams Dec."), and exhibits thereto.

- <u>Fifth</u>, Plaintiffs' claims against McInerney fail because they, too, are premised on conclusory, fact-deficient allegations that fail to state plausibly that McInerney had "operational control" over Plaintiffs.

For these and other reasons stated below, Plaintiffs' claims should be dismissed.

## II.     STATEMENT OF FACTS[2]

### A.     FreshDirect's Business

FreshDirect, based in Long Island City, Queens, employs approximately 2,000

individuals. (SAC ¶¶ 13, 60).  Its customers browse for groceries, place their orders and receive

confirmations and details of their orders all through FreshDirect's website and mobile app.  The

website also provides information about FreshDirect's operations and policies, including through

a webpage containing answers to "Frequently Asked Questions" and through its "Customer

Agreement."[3]

FreshDirect's deliveries are made by UTF, a motor carrier and/or motor private carrier

registered with the United States Department of Transportation.  (Riaz Dec. ¶ 2 and Exs. 2-3).

Plaintiffs and the putative class – approximately 300 employees "involved in the direct delivery

of food and groceries to [FreshDirect's] customers" – all are (or were) UTF employees.  (SAC

¶ 60; Riaz Dec. ¶ 4; Ex. 1).

### B.     FreshDirect's Delivery Fee

FreshDirect does not charge the majority of its customers a Delivery Fee.  (Riaz Dec. ¶

---

[2]  This Statement of Facts is based on the SAC and on extrinsic facts to be considered in connection with that part of Defendants' motion that seeks summary judgment pursuant to Fed. R. Civ. P. 56. (Point I, below). Because the SAC extensively quotes from, and explicitly relies on, FreshDirect's website (*see* SAC ¶¶ 97, 99, the totality of the website is properly considered on Defendants' 12(b)(6) motion to dismiss.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (on Rule 12(b)(6) motion, court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit"); *see also Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F.Supp.2d 690, 693 n. 3 (S.D.N.Y. 2009) (considering, on a motion to dismiss, facts drawn from court's own review of website where website incorporated by reference into complaint).

[3]  *See* https://www.freshdirect.com/help/faq_home.jsp?page=faqHome (last visited September 12, 2014) and https://www.freshdirect.com/help/terms_of_service.jsp (last visited September 12, 2014).

7).  For example, FreshDirect runs frequent promotions waiving the Delivery Fee in order to fill

excess truck capacity, (Riaz Dec. ¶ 8), sometimes waives the Delivery Fee as a remediation

method (*id*.), and many customers purchase a "Deliverypass" to enjoy unlimited deliveries for a

fixed, taxable charge.[4]  Still others pay through the Supplemental Nutrition Assistance Program

or pick up their orders at FreshDirect's Long Island City facility.[5]  Customers can also receive a

$2.00 discount on the Delivery Fee by scheduling deliveries for off-peak hours."[6]

When FreshDirect does charge a Delivery Fee, it is a fixed, flat-rate fee that appears on

customers' order confirmations.  The amount of the Delivery Fee is based solely on a customer's

geographic location, regardless of the size of the order – $5.99 for deliveries to New York City,

$6.99 for Westchester, Rockland and Long Island except the Hamptons, and $15.99 for the

Hamptons.[7]

### C.   FreshDirect's Tipping Policy

FreshDirect's website explains its tipping policy which at all relevant times stated:

> [A]t this time we do not have the technology to add tips to your
> order total.  If you feel that you've received exceptional service,
> please feel free to tip your delivery team . . . . You are under no
> obligation to tip but have the option of providing a nominal tip if
> you feel you've received exceptional service. FreshDirect delivery
> personnel are not permitted to solicit tips under any circumstances.
> (SAC ¶ 97).

Plaintiffs allege they earned hourly wages ranging from $8.00 to $19.25.  (SAC ¶¶ 73, 78) and

also receive cash gratuities from customers.  (SAC ¶ 111).

---

[4]  *See* https://www.freshdirect.com/help/faq_home.jsp?page=delivery_pass (last visited June 2, 2014).

[5]  *See* https://www.freshdirect.com/help/delivery_lic_pickup.jsp (last visited June 2, 2014);
https://www.freshdirect.com/category.jsp?catId=about_ebt&trk=home (last visited June 2, 2014).

[6]  *See* https://www.freshdirect.com/help/faq_home.jsp?page=home_delivery#home_delivery_eco (last visited June 2, 2014).
[7]  *See* https://www.freshdirect.com/help/delivery_info.jsp (last visited September 12, 2014).

D.     **The Collective Bargaining Agreement**

UTF is a unionized employer, and UTF's employees are represented in collective

bargaining by Local 348-S, U.F.C.W, which has negotiated contracts with UTF on behalf of its

members during all periods relevant to this action.  (Williams Dec. ¶ 4).

<u>**ARGUMENT**</u>

I.     **PLAINTIFFS' NYLL CLAIM IS PREEMPTED BY THE FAAAA.**

The FAAAA provides that "a State . . . may not enact or enforce a law, regulation, or

other provision having the force and effect of law related to a price, route, or service of any

motor carrier . . . or any motor private carrier . . . with respect to the transportation of property."

49 U.S.C. § 14501(c)(1).[8]  UTF is a "motor carrier" and/or "motor private carrier" registered

with the United States Department of Transportation.  (Riaz Dec. ¶ 2 and Exs. 2-3).

When applied to UTF, NYLL § 196-d does the very thing proscribed by the FAAAA.

NYLL § 196-d states, in relevant part:

> Gratuities.  No employer or his agent or an officer or agent of any
> corporation, or any other person shall demand or accept, directly or
> indirectly, any part of the gratuities, received by an employee, or
> retain any part of a gratuity or of any charge purported to be a
> gratuity for an employee.

Because NYLL § 196-d plainly "relate[s] to a price, route, or service of any motor carrier . . . or

any motor private carrier" and frustrates the purpose of the FAAAA, Plaintiffs NYLL § 196-d

claim is preempted when applied in this case and should be dismissed.

A nearly identical claim and preemption provision were at issue in *DiFiore v. American

Airlines, Inc.*, 646 F.3d 81 (1st Cir. 2011).  There, a group of curbside skycaps claimed that

American Airlines misappropriated a $2 per bag service charge for luggage checked outside the

---

[8]  Despite its title, the FAAAA is not limited to regulation of transportation of goods by air.

terminal, which they alleged was actually a tip to which they, not the employer, were entitled under the Massachusetts Tip Law.[9]  The jury found for the skycaps.  Reversing, the First Circuit held that the Airline Deregulation Act ("ADA") which, like the FAAAA, "preempted state laws 'relating to rates, routes, or services'" (*id*. at 85),[10] precluded the skycaps' state law claim.  This holding squares with the Supreme Court's federal preemption decision in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 375 (1992) (guidelines adopted by state attorneys general restricting airfare advertising are preempted by Section 1305(a)(1) of the ADA because, "[i]n light of the breadth of § 1305(a)(1)'s 'relating to' phrase, a state enforcement action is preempted if it has a connection with, or reference to airline 'rates, routes, or services'") (*citations omitted*); *see also Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1430 (2014) (applying *Morales*'s broad definition of "relate[d] to" as having "a connection with, or reference to").

The First Circuit distinguished tips laws, which are preempted, from anti-discrimination and retaliation laws, which some Circuits have held are not preempted, reasoning:

> The dividing line turns on the statutory language "related to a price, route, or service." Importantly, the tips law does more than simply regulate the employment relationship between the skycaps and the airline; unlike the cited circuit cases, the tips law has a *direct connection* to air carrier prices and services and can fairly be said to regulate both.  As to the latter, American's conduct in arranging for transportation of bags at curbside into the airline terminal en route to the loading facilities is itself a part of the "service" referred to in the federal statute, and the airline's "price" includes charges for such ancillary services as well as the flight itself.

---

[9]  The Massachusetts Tip Law requires that "service charges" – defined to include fees that "a patron or other consumer would reasonably expect to be given to a service employee in lieu of, or in addition to, a tip" –be given to service employees.  *Id.*at 84.  The plaintiffs in *DiFiore* argued that "passengers mistook the fee for a mandatory gratuity for the skycaps" (*id*. at 82), just as Plaintiffs in this case contend that FreshDirect's Delivery Fee is understood by its customers to be a tip to which Plaintiffs are entitled.

[10]  The ADA and FAAAA contain similar preemption provisions and courts cite precedent as to both "interchangeably."  *DiFiore,*646 F.3d at 86 n. 4; *see also Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370-71 (2008) (relying on ADA opinion to interpret FAAAA preemption).

*DiFiore*, 646 F.3d at 87 (emphasis in original); *cf. Dilts v. Penske Logistics, LLC*, No. 12-55705, 2014 WL 4401243, at *6 (9th Cir. Sept. 8, 2014) (citing *DiFiore* with approval as example of properly preempted state law).

Similarly, if NYLL § 196-d were to be enforced against UTF and FreshDirect, the consequences would not simply relate to the employment relationship between FreshDirect's affiliate, UTF, and its delivery personnel, but would regulate how FreshDirect's delivery service "is performed and how its price is displayed to customer – not merely how [it] behaves as an employer or proprietor." *DiFiore*, 646 F.3d at 88. Thus, enforcement of Plaintiffs' NYLL claim would have a "direct connection" to the prices FreshDirect charges and the services it provides through UTF as a motor carrier and/or motor private carrier and the relationship between FreshDirect and its customers. *Id.* at 87. Treating the Delivery Fee collected by FreshDirect as a tip owed to its employees would eliminate an income stream and would necessarily have an impact upon the motor carrier's prices and services. Plaintiffs concede as much, noting that, FreshDirect uses the revenue from the Fees to "pay for various administrative costs and business expenses" (SAC ¶ 95), forcing FreshDirect to pay those costs from some other source. The magnitude of this treatment cannot be understated. For example, the SAC alleges that one Plaintiff, an entry-level employee, had a starting wage of $8.00 per hour and worked 50 hours per week, which comes to annual compensation of at least $22,000 per year. (SAC ¶¶ 72-73). Under Plaintiffs' theory, FreshDirect should have been paying this entry-level employee more than five times that, or $119,500 per year.[11] Being forced to pay its entry-level deliverers a six-

---

[11] Plaintiff's $22,000 annual compensation is calculated by assuming that this Plaintiff worked 50 weeks per year, with the first 40 hours of his 50 hour week earning $8.00 per hour, and the remaining 10 hours per week at time-and-a-half of $12.00 per hour: 50 weeks x (40 hours x $8.00 per hour + 10 hours x $12.00 per hour) = $22,000. Plaintiffs claim that delivery personnel "each make approximately 50 deliveries per day." (SAC ¶ 88). Again assuming, as Plaintiffs allege, a 50 week work-year, 50 deliveries per day five days per week with a minimum delivery fee of $5.99 per delivery (for Manhattan) (SAC ¶ 91), and a 50 hour work week, Plaintiffs should each have received an additional $97,500 per year, at least, excluding cash tips that may have also been paid by customers.

figure salary would inevitably affect the pricing and manner of service FreshDirect provides to its customers.

Thus, if applied to motor carriers such as UTF, NYLL § 196-d "can fairly be said to regulate both" price and service (*DiFiore*, 646 F.3d at 87), which the FAAAA plainly prohibits. Plaintiffs' § 196-d claim, therefore, should be dismissed as preempted.  Because Plaintiffs' FLSA claim is necessarily dependent on their NYLL claim, it too, should be dismissed.

## II.    PLAINTIFFS' NYLL CLAIM IS PREEMPTED THE LMRA.

Section 301 of the LMRA, which gives federal courts the ability to enforce CBAs, also serves to preempt certain state law claims relating to CBAs.  29 U.S.C. § 185(a).[12] When a court must interpret a CBA to determine whether a state law has been violated – the precise situation presented here with respect to Plaintiffs' NYLL claim – a claim based on that law is preempted by § 301.  Here, (i) the employees are unionized; (ii) there is a CBA; (iii) the CBA expressly addresses tips in Section 4.3, which requires delivery personnel to report all tips received on a daily basis (the "Tips Provision"); and (iv) the parties have bargained over many years and as recently as last month over the meaning of tips and the perceptions and understandings of FreshDirect customers' concerning the Delivery Fee.[13]   It follows that on these indisputable facts, § 301of the LMRA preempts § 196-d as to Plaintiffs in this case.

### A.    The Legal Standard for § 301 Preemption

Section 301 requires federal courts to fashion a uniform body of federal common law from federal labor laws for the interpretation and enforcement of CBAs.  *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 455-456 (1957).  That federal body of law displaces any state law

---

[12]  Section 301(a) provides that: "Suits for violation of contracts between an employer and labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

[13]  Copies of the 2007 and 2010 CBAs are attached as Exhibits 1 and 3 to the Williams Dec.

claims that are either "founded on" or "substantially dependent" upon the analysis of a CBA. *Teamsters Local v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962); *Caterpillar v. Williams*, 482 U.S. 386, 394 (1987) (Section 301 "governs claims founded directly on rights created by" or "substantially dependent" upon interpretation of a CBA); *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261(1994).

Lawsuits brought by individual employees that raise state law claims against their unionized employers are often preempted by § 301 even when the state law claim is not "founded on" the CBA.  *Smith v. Evening News Ass'n*, 371 U.S. 195, 200 (1962).  Indeed, if "evaluation of the . . . claim is inextricably intertwined with consideration of the terms of the labor contract," then the claim is preempted.  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).  The Supreme Court has interpreted § 301 in this way to promote industrial peace by facilitating collective bargaining.  *Teamsters Local,* 369 U.S. at 103.  Success on Plaintiffs' claim would make a mockery of the collective bargaining process by doubling, tripling and even quintupling their wages without negotiations, and undermine this longstanding federal objective.

**B.    Plaintiffs' NYLL § 196-d claim is preempted by § 301 because their own allegations would require this Court to undertake substantial interpretation of the CBAs, which § 301 prohibits.**

Plaintiffs' own allegations demonstrate that their NYLL claim is "substantially dependent" upon an interpretation of the CBAs.  They allege at ¶ 69 of their SAC that their claim arises from Defendants' "policies and practices with respect to all delivery personnel"; specifically, that they "are victims of a uniform and employer-based compensation policy . . . [that] has been applied and continues to be applied to all delivery personnel in the State of New York."  *Id.* at ¶ 92.  Artful pleading aside, the only "compensation policy" applicable to Plaintiffs is the one contained in the two CBAs during FreshDirect's history; those agreements cannot be changed without negotiations.  Thus, their claim essentially boils down to an allegation that the

CBA violates § 196-d – a matter for a grievance under the CBA, not a federal lawsuit.

In *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003), the Second Circuit recognized that "challenge[s] to the lawfulness of a term of the CBA will require substantial interpretation of the CBA." Here, Plaintiffs' challenge will require precisely that, because, under the rubric of a "uniform and employer-based compensation policy" (*id*. at ¶ 92), it invokes multiple provisions of the CBA, which work together to create a complex system governing compensation of the delivery personnel.  The CBAs contain provisions on wages, overtime eligibility, paid-for-time, paid time off, and, most significantly, tips.  In fact, during negotiation sessions completed last month that are described in more detail in Section C, *infra*, the Plaintiffs' Union proposed deleting the tip-related language, triggering an exchange of information and proposals regarding the role of the Delivery Fee in the delivery personnel's compensation structure.  (Williams Dec. ¶ 10; Ex. 4).

Supreme Court precedent makes clear that, when a plaintiff claims his or her CBA violates a state law, that claim is preempted, because it requires the court to interpret the CBA. Plaintiffs attempt to plead around the CBAs in this case by describing them as compensation-related "policies and practices," (SAC ¶ 69), but a plaintiff may not "artfully plead" around preemption. *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983); *overruled on other grounds, Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1246 (9th Cir. 2009).

     **C.**    **Plaintiffs' state law claim is also preempted because the ambiguity of the term "tips" in the CBA would require the Court to inquire impermissibly into the meaning of the CBAs.**

In *Kaye v. Orange Reg'l Med. Ctr.*, 2013 U.S. Dist. LEXIS 141065, 27-28 (S.D.N.Y. Sept. 30, 2013), Judge Karas concluded that interpreting a CBA is necessary to determine whether state law claims are preempted when the relevant provisions in the CBA are ambiguous.

*See also Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 333 (S.D.N.Y. 2012).  Here, the Tips Provision in Section 4.3 of the 2010 CBA is both (1) relevant and (2) ambiguous.[14]  Thus, interpretation of the CBAs is required to resolve Plaintiffs' § 196-d claim for what they allege to be unpaid tips.

### (1)   The Tips Provision in Plaintiffs' CBAs is relevant to Plaintiffs' NYLL claim.

The Tips Provision is relevant to Plaintiffs' NYLL claim, because it reflects both parties' understanding of what FreshDirect's customers think about the purpose of the Delivery Fee, based upon their interactions and experiences.  Plaintiffs allege that FreshDirect customers advised delivery personnel that they believed the Delivery Fee to be a tip.  (SAC ¶ 101).  Presumably, those employees would have grieved FreshDirect's failure to remit 100% of those "tips" (since treating the Delivery Fee as a tip would have tripled their wages) and arguably would have reported the Delivery Fees as tips to comply with the requirements of the CBA.

What the delivery personnel did do is bring their concerns to the table, and they did so often.  The bargaining history between FreshDirect and the Union over the past seven years demonstrates repeated discussions over FreshDirect's tipping policy that, critically for this case, included exchanges about what FreshDirect's customers understand the Delivery Fee to be.[15]  In negotiations for the 2007 CBA, the Union proposed that FreshDirect be required to state on its website and in its policy manual that tips were *not* part of the delivery charge, and that customers wishing to tip delivery personal were free to do so in their sole discretion. (Williams Dec. ¶ 6; Ex. 2).  These proposals were obviously based upon the Union's perception – true or false – that

---

[14]   The ambiguity in the Tips Provision should not be confused with the lack of ambiguity in the information FreshDirect made available to its customers about the Delivery Fee.

[15]   Defendants dispute, of course, that any assertions by the Union as to customer understanding of the Delivery Fee is evidence of what customers actually believe in this regard. Indeed, no reasonable customer could believe the Delivery Fee to be a tip.  *See* Point IV, *infra*.

some customers believed the Delivery Fee to be a tip, which cut into the tips the delivery personnel might otherwise receive.  Thus, for this Court to "merely refer" to the CBA would be pointless.  The 2007 CBA was silent as to tips.

The tips issue arose repeatedly in subsequent rounds of negotiations.  In the negotiations leading to the 2010 CBA, the parties again bargained over tipping and agreed to add the Tips Provision. (*Id*. at ¶ 8).  And in the most recent round of negotiations, concluded just last month, the Union yet again initiated bargaining over tips, this time by proposing deletion of the Tips Provision altogether, and inquiring as to whether tipping could be facilitated by adding the ability to tip electronically when ordering.  (*Id*. at ¶¶ 10-11).  In response to the Union's proposal and the Union's questions, FreshDirect distributed copies of the webpage available to its customers that sets forth FreshDirect's tipping policy.  (*Id*. at ¶ 12; Ex. 5).  FreshDirect informed bargaining unit members and the union that the Delivery Fee is intended to cover delivery expenses such as fuel, labor, and truck maintenance, and that the cost of a Manhattan delivery ($13.00) is actually over twice as much as the Delivery Fee ($5.99), with FreshDirect absorbing the difference.  (*Id*. at ¶ 13).  Further, FreshDirect and the Union openly and repeatedly discussed the meaning of the word "tips," debating the key issue in this case—whether FreshDirect's customers believe the Delivery Fee to be a tip.  (*Id*. at ¶ 14).  These exchanges further demonstrate that Plaintiffs, through their Union, used the customers' understanding as to the nature of the Delivery Fee when negotiating wages under their CBAs, and that inquiries into the bargaining would, therefore, inform a decision about the enforceability of § 196-d in this unionized setting.

In sum, in order to determine whether FreshDirect has violated § 196-d, this Court would have to interpret both the 2007 CBA and the 2010 CBA to ferret out the understanding of the

parties and FreshDirect's customers as to the meaning of "tip." And the Court would have to go beyond that, by inquiring into the parties' bargaining history, because the relevant universe of facts is not limited to the four corners of a CBA. *See Allis-Chambers*, 471 U.S. at 214 ("The court evidently assumed [,improperly,] that the only obligations the parties assumed by contract are those expressly recited in the agreement . . . ."); *In re Weyerhaeuser Company and Pace Local 162*, 114 LA 1477, 1480 (Neas 2000) ("the entire collective bargaining agreement of the parties is something more than the Contract book"). By engaging in such interpretation, inquiring into the parties' bargaining history through the review of proposals made during the bargaining, taking evidence as to customs in the industry, and reviewing policies and practices not set forth in the CBAs, but promulgated or modified as a consequence of developments at the bargaining table, this Court would become embroiled in precisely the kind of analysis that § 301 preemption prohibits.[16] The next question is whether the CBA is ambiguous in relevant part.

**(2)  The Tips Provision in the 2010 CBA is also ambiguous.**

The Tips Provision at issue here exemplifies ambiguity. Plaintiffs must assert a belief that a "tip" includes the Delivery Fee to prevail on their state law claim, and FreshDirect maintains that "tip" does not include the Delivery Fee.

This ambiguity triggers the need for inquiries concerning the language of the parties' CBA and their bargaining history in order to interpret that language. If, for example, FreshDirect were to assert that the Tips Provision requires delivery personnel to report each day the number of Delivery Fees paid by each customer for each delivery, and the amount of that Fee, mere

---

[16] Indeed, the inquiry may not stop even with bargaining history. The meaning of "tips" in the CBA is–and should be–informed by custom and usage in the delivery industry as well. *See Haggins v. Verizon New Eng., Inc.*, 648 F.3d 50, 55-56 (1st Cir. 2011) (customs and usages of an industry, as well as of the particular employer involved, are a part of a CBA whether expressly incorporated or not); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-82 (1960) ("the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement, although not expressed in it"). Thus, this Court would have to interpret not only the parties' understanding and intent, but also the "custom and usage in the industry" in order to determine the scope of the CBAs.

referral to the CBA would be insufficient to determine whether that demand finds support in the language of the CBA.[17]  Attempting to determine whether the CBA permits FreshDirect to assert such a demand would necessarily involve this Court interpreting, not merely referring, to the 2007 and 2010 CBAs.  *Kaye*, 2013 U.S. Dist. LEXIS 141065 at *22.[18]  As another example, if FreshDirect and the Union were to agree that employees are permitted to accept tips from customers, it is at least arguable that the parties also agreed that a reasonable FreshDirect customer understands that the Delivery Fee is not a tip.  One thing is clear however: It is impossible to know what the parties' understanding was or what they intended, without interpreting the CBAs and delving into the bargaining history.  For § 301 preemption purposes, it does not matter where these inquiries lead; what matters is that the inquiries are necessary in the first instance, because the § 301 was enacted to prevent precisely these types of inquiries.[19]

## III.    SECTION 196-D IS PREEMPTED BY THE FLSA ITSELF.

If Plaintiffs' theory that the Delivery Fee is a tip under § 196-d were correct, then the state law is preempted by federal law for an additional reason – FLSA and IRS regulations require that: (1) mandatory charges like the Delivery Fee be included in gross receipts; (2) a distributed charge be incorporated in employees' regular and overtime wage rates, and (3) prohibit the charge from being distributed as a tip.  Section 196-d mandates the opposite

---

[17]  Mere referral to a CBA, which is permitted by § 301, is to be distinguished from interpreting a CBA. *See, e.g., Tamburino v. Madison Sq. Garden L.P.,* 980 N.Y.S.2d 83 (1ˢᵗDep't 2014), in which "detailed provisions" in the CBA required only referral, obviating the need for interpretation.

[18]  Defendants do not contend that this dispute would actually have arisen during the term of the CBAs, because, on information and belief, no one at FreshDirect, and no one at the Union, thought that the Delivery Fee was even arguably a tip; certainly no one behaved as if they thought it was Defendants merely provide this example as an illustration of how analysis of the CBAs and their bargaining history is necessary to determine whether a § 196-d violation occurred.

[19]  Plaintiffs' FLSA unpaid overtime claim is based entirely on the validity of their § 196-d claim. (SAC ¶¶ 84-85). Because Plaintiffs' § 196-d claim is preempted, their derivative FLSA claim fails too. *Hoops v. Keyspan Energy*, 822 F. Supp. 2d 301, 306-09 (E.D.N.Y. 2011) (Section 301 precluded employee's FLSA claim for overtime, because resolving that claim necessitated inquiry into a threshold issue that required interpretation of a CBA).

treatment, and it is, therefore, preempted by the Supremacy Clause.  U.S. Const. Art. IV, cl. 2.

Congressional intent to preempt appears either expressly in a federal statute, or through implication in its structure and purpose.  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996). Implied preemption, applicable here, occurs where a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987).  To determine whether a state law poses such an obstacle, "it is not enough to say that the ultimate goal of both federal and state law" is the same; "[a] state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach th[at] goal." *Int'l Paper Co. v. Ouellete*, 479 U.S. 481, 494 (1987). "Where a state statute conflicts with, or frustrates, federal law, the former must give way." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993).  The state law at issue here, NYLL § 196-d, "interferes with the methods by which the federal statute was designed to reach [its] goal" by obstructing the method selected by Congress for regulating mandatory charges.

### A.    Obligations imposed by § 196-d conflict with FLSA and IRS Regulations.

The FLSA's Regulations provide that any "compulsory charge for service" is *not* a gratuity, and, if such compulsory charges are distributed, they are subject to withholding and other requirements for the distribution of wages, as follows:

> A compulsory charge for service, such as 10 percent of the amount
> of the bill, imposed on a customer by an employer's establishment,
> is *not a tip* and, even if distributed by the employer to his
> employees, *cannot be* counted as a tip . . . .  The amounts received
> from customers are the employer's property, not his, and do not
> constitute tip income to the employee.

29 C.F.R. § 531.55(a) (emphasis added).  Conversely, § 196-d provides that "gratuities" or "any charge purported to be a gratuity" retained by an employer *must be* treated as a tip: "No employer or his agent or an officer or agent of any corporation, or any other person shall demand

or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

Plaintiffs contend that FreshDirect's Delivery Fee is a charge purporting to be a gratuity. If they were right, compliance with the state law would frustrate the purpose and intent of federal law. The FLSA provides that the delivery fee *must not* be considered a tip, *must* be included in the employer's gross receipts, and *must* be incorporated into employees' wages rates, if distributed. Simultaneously, if Plaintiffs' reading of the law were correct, § 196-d provides that the delivery fee *must* be considered a tip, *must not* be included in the employer's gross receipts, and *must not* be used to pay employees' regular wages. Thus, § 196-d is in direct conflict with, and, therefore preempted by, the FLSA.

IRS policies and regulations underscore the state law's interference with the FLSA regulatory scheme. Since January 1, 2013, the IRS has required that mandatory fees, when "added to a bill or fixed by the employer that the customer must pay, when paid to an employer, will not constitute a tip but rather constitute non-tip wages. These non-tip wages are subject to social security tax, Medicare tax, and federal income tax withholding." IRS Tax Topic 761.[20] In an internal memorandum, the IRS informed its field examiners that they "*must* ensure that distributed service charges are properly characterized as wages and not tips." IRS INTERIM GUIDANCE ON REV. RUL. 2012-18 (emphasis added).[21] The IRS Interim Guidance also states without equivocation that "[d]istributed service charges that have been characterized as tips should generally be recharacterized [as wages] . . . ." *Id*. Thus, any employer who characterized

---

[20]  *Available at* http://www.irs.gov/taxtopics/tc761.html(last visited September 12, 2014).

[21]  Based on comments received from the public in response to the June 7, 2012 memorandum, the IRS postponed enforcement of its service charge policies until January 1, 2014, in order to grant employers additional time to ensure their compliance with federal law. *See* IRS Announcement 2012-50, *available at* http://www.irs.gov/pub/irs-drop/A-12-50.pdf (last visited September 12, 2014).

a mandatory charge as a tip would violate IRS regulations and the FLSA.[22]

In sum, the federal government has set forth its intent to regulate mandatory charges as taxable income to the employer and as wages–not tips–when distributed to employees.  By prohibiting employers from including mandatory charges in their gross receipts and by requiring the mandatory charges to be distributed as tips–not wages–§ 196-d frustrates that intent and is, therefore, preempted by the Supremacy Clause.

## IV.  PLAINTIFFS' NYLL CLAIM FAILS TO STATE A CLAIM FOR RELIEF.

Under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A pleading that merely offers "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s] . . . without some further factual enhancement." *Bell Atl. Corp.*, 550 U.S. at 555, 557.  Plaintiffs' foundational allegation – that the Delivery Fee is a misappropriated gratuity – fails to meet this plausibility standard.  Not only does the SAC rely almost exclusively on conclusory allegations and implausible inferences, but the few facts it does allege show that the Delivery Fee is not a gratuity.

---

[22]  The Second Circuit has not yet not opined on whether § 196-d is preempted by the FLSA. Two district courts, however, in decisions that are readily distinguishable and were rendered in advance of the new IRS regulations concluded preemption was inapplicable to those facts. In *Luiken v. Domino's Pizza*, LLC, 654 F. Supp. 2d 973 (D. Minn. 2009), the court analyzed whether the FLSA preempted a state law similar in purpose and language to § 196-d. The court noted that "on their face, the statutes appear to be at odds," but then determined that the effect of the state law was simply to create a higher minimum wage, which is authorized by the FLSA. *Id* at 981. *Luiken* is not controlling of course, but (1) it was also decided before the IRS issued Rule 2012-18; and (2it relies upon the fiction that a single sum of money can somehow simultaneously be treated as a gratuity (paid in full to employees and not taxable to the employer), and as income to the employer (with the employer paying corporate income tax on the sum), and as wages (from which all applicable taxes and withholdings must be taken), which the IRS guidance directing its examiners to "recharacterize" service charges paid makes unsustainable.

In *Davis v. Four Seasons Hotel Ltd.*, 810 F. Supp. 2d 1145 (D. Haw. 2011), the court found no preemption because "[t]he FLSA does not prohibit service charges from being distributed to employees as tip income." *Id*. This is just wrong. The FLSA expressly prohibits mandatory charges from being distributed as tip income. *See* 29 C.F.R. § 531.55(a) ("A compulsory charge for service . . . is not a tip and, even if distributed by the employer to his employees, cannot be counted as a tip"). And, as with *Luiken*, that opinion preceded the new IRS regulations.

### A.      FreshDirect's Delivery Fee is not a gratuity.

Undisputed facts compel a determination that the Delivery Fee is not a gratuity.  Indeed, Plaintiffs' own factual allegations underscore this showing.  First, unlike a gratuity, which is generally paid at the customer's discretion for good service, the Delivery Fee is mandatory, is not tied to the size of the order or the quality of the service, and is not affected by the relationship between the customer and the deliverer.  It is, rather, a fixed amount based on the customer's location that does not vary regardless of whether the customer's order is $35, $350, or $3,500.  The $5.99 Delivery Fee in Manhattan is exactly the same for a delivery of a single, light box to a customer's doorman in the lobby of a high-rise as it would be for the delivery of twenty heavy boxes to a fourth-floor walk-up.

Second, the Delivery Fee is taxed and the customer's bill reflects that.  Gratuities, by contrast, are not subject to sales tax, whether they are "voluntary gratuities" or "mandatory gratuities" that are clearly and separately marked as such and paid to the service provider.  *See* Tax Bulletin ST-320, Issued: February 23, 2012, *Gratuities and Service Charges*, New York State Department of Taxation and Finance.[23]  These facts are undisputed.

### B.      FreshDirect's Delivery Fee does not "purport[] to be a Gratuity."

The Delivery Fee also does not "purport[] to be a gratuity" under NYLL § 196-d.  A charge may purport to be a gratuity "when it is shown that employers represented or allowed

---

[23]  This tax bulletin provides, in relevant part, as follows:  "For sales tax purposes, the term *gratuity* means money a customer gives a wait person, server, housekeeper, or other person as an expression of appreciation for service rendered, such as a tip at a restaurant or bar.  *Voluntary gratuities*  that a customer leaves are not taxable.  *Mandatory gratuities* are different because they are automatically added onto the bill given to the customer.  However, a mandatory gratuity is not taxable if **all** of these conditions are met:

- the charge is shown separately on the bill;
- the charge is identified as a *gratuity*; and
- the business gives the entire separately stated gratuity amount to its employees.

If any of these conditions is not met, the mandatory gratuity is taxable, along with the rest of the bill. Service charges or other charges not specifically listed as gratuities on a bill or invoice are subject to sales tax."  Tax Bulletin ST-320 (emphasis in original).

their customers to believe that the charges were in fact gratuities for their employees." *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81 (2008).  This "should be weighed against the expectation of the reasonable customer." *Id.* at 79.  Applying this standard here, Plaintiffs' fail to state a plausible claim that the Delivery Fee is a "charge purported to be a gratuity"; indeed, the few specific allegations they do make require the opposite conclusion.

As a preliminary matter, the term "delivery fee" describes a shipping and handling cost, in sharp contrast to the term "service charge" at issue in such cases as in *World Yacht* and *Martin v. Restaurant Assocs. Events Corp.*, 106 A.D.3d 785 (2d Dep't 2013), which concerned percentage-based "service charges" in the context of banquet services, not a flat-dollar fee. "Service charge" necessarily denotes a "service" element.  "Delivery fee" does not.

Moreover, as noted above, FreshDirect's website unequivocally provides that tips could not be included in the online order, in contrast to the Delivery Fee, which is mandatory; tipping, however, the website proclaims, is optional if the customer was satisfied with the service.  (SAC ¶ 97).[24]  Nor could those customers purchasing "Deliverypass," SNAP customers who do not pay any Delivery Fee, or those obtaining a $2.00 discount by scheduling an off-peak delivery, reasonably assume that employees had waived "gratuities" that would otherwise be expected, for delivering their orders.[25]

Indeed, FreshDirect's website affirmatively explains the purpose of the Delivery Fee by detailing the process for delivery of fresh food on the same page that sets forth the Delivery Fee amounts by location: "[f]resh foods need extra care in handling, and we do all the right things to make sure your food gets to you in top shape . . . We put the boxes straight into our own

---

[24] *See also* https://www.freshdirect.com/help/faq_home_pop.jsp?page=delivery_feedback (last visited June 2, 2014).

[25] The Customer Agreement also explicitly states that delivery personnel are allowed to accept tips.  *See* https://www.freshdirect.com/help/terms_of_service.jsp (last visited June 2, 2014).

FreshDirect refrigerator/freezer trucks, keeping everything cool and dry until it reaches you."[26]

This discloses the delivery costs, *i.e.*, boxing orders and operating trucks that the Delivery Fee

covers.  Plaintiffs concede this, as they allege the Delivery Fee is used to "pay for various

administrative costs and business expenses" (SAC ¶ 95).

As also noted above, the Delivery Fee is taxed and is so noted on customers' bills.

Reasonable customers know that when they include a tip on a restaurant bill or give a cash tip to

a parking attendant, they do not pay sales tax on it.

Plaintiffs offer a handful of conclusory allegations, implausible inferences, and non-

specific anecdotes to support their theory that the Delivery Fee is a gratuity:

- The conclusory allegations that FreshDirect "misled" its customers into believing the Delivery Fee was a gratuity and that "FreshDirect's website would have the reasonable customer believe that the 'delivery charge' is a gratuity" (SAC ¶¶ 99, 100).  Plaintiffs do not allege FreshDirect ever told any customer the Delivery Fee was a tip, or otherwise misrepresented its nature, and FreshDirect's website demonstrates just the opposite – that FreshDirect was clear with customers that tipping was optional and that tips were not, and could not be, included in online payments;

- Plaintiffs' further allegation that customers infrequently tip "because they believed the automatic delivery charge was [Plaintiffs'] gratuity" (¶ 112) is equally conclusory and also ignores the FreshDirect's disclosures about its tipping policy;

- The allegation that the Delivery Fee purports to be a gratuity because FreshDirect separately charges a "fuel surcharge."  (SAC ¶¶ 92, 93).  Plaintiffs apparently mean to suggest that a reasonable customer would think the cost of fuel is the *only* cost FreshDirect incurs in its delivery operations, so that the Delivery Fee must be a tip – an untenable leap of logic;

- Plaintiffs' allegation that they seldom receive, and may not request, tips (SAC ¶¶ 97, 98,110-112).  Assuming their truth for present purposes, these allegations are consistent with FreshDirect's tipping policy as explained on its website and in no way support the notion that reasonable customers regard the Delivery Fee as a tip; and

- Plaintiffs' contention that customers believe the fee is a gratuity because FreshDirect does not explain the purpose of the Delivery Fee to its customers (SAC ¶ 93).  This bald assertion simply ignores the many pieces of information FreshDirect customers have at hand, all as provided by FreshDirect, as described above.

---

[26] *See* https://www.freshdirect.com/help/delivery_info.jsp(last visited June 2, 2014).

In their Second Amended Complaint, Plaintiffs attempt to overcome this paucity of specific facts by alleging that a few (unidentified) customers have (at unspecified times and places) asked questions and made comments to Plaintiffs – for example, an inquiry "if [a Plaintiff] got the tip?" (SAC § 102); "Did you guys get the tip I left online?" ( SAC § 102):  and "I thought you guys got tipped already" ( SAC § 107).  These allegations, even taken as true, do not render plausible Plaintiffs' claim that reasonable customers believed the Delivery Fee was a tip.  Such nonspecific, anecdotal allegations hardly negate the stubborn fact that FreshDirect communicated to its customers that the Delivery Fee was not a tip.  Moreover, the standard for determining customers' belief is not whether "all customers" or the "least sophisticated customers" believed that the Delivery Fee was not a tip, but whether the "reasonable customer" did.  *See Sokolski v. Trans Union Corp.*, 53 F.Supp.2d 307, 315 (E.D.N.Y. 1999) (in deceptive practices claim under Section 349 of the N.Y. General Business Law applying "reasonable consumer" standard, "Section 349 is violated, not when the 'least sophisticated consumer' would be confused, but when 'a reasonable consumer would have been misled by defendant's conduct').Indeed, according to Plaintiffs, approximately 1,500 deliveries were made per day (300 personnel making 50 deliveries per day), and, given such a large number of customers, there could certainly be a handful of new customers or customers who did not pay any attention to FreshDirect's website, or their bill or the disclosures they contained about the Delivery Fee.  That there may have been, among FreshDirect's large customer base, a few inattentive or unreasonable individuals, says nothing about what the reasonable customer would understand, and certainly does not overcome the implausibility of Plaintiffs' claim in view of the express disclosures on the website and the bill.

Tellingly, Plaintiffs fail to allege any *response* made to any of these customers'

comments or questions.  Presumably, if a customer truly posed a question about the Delivery Fee

like those set forth above, the Plaintiff would have advised the customer that it was *not* a tip.  In

*Luiken v. Domino's Pizza*, *LLC*, 705 F.3d 370 (8th Cir. 2013), pizza delivery drivers claimed that

delivery charges were in fact tips.  In reversing the district court's grant of class certification, the

Eighth Circuit wrote:

> The customer's circumstances determine whether the delivery
> charge might reasonably be construed as a payment for personal
> services.  If, for example, Luiken explained to the customer that
> the delivery charge was not a gratuity (as he sometimes did), that
> customer could not reasonably believe otherwise—and no notice
> would be required.  [*Id.* at 373] … Most problematic for Luiken is
> that even if his interpretation were correct, some drivers explicitly
> told customers that the charge went to Domino's or that it was not
> a gratuity.  Luiken himself told some customers, 'There's this
> delivery charge, but it's not—that's not actually a gratuity." Those
> customers could not then reasonably believe it was.  [(*Id.* at 376.)]

Similarly, all of the customer questions and statements referenced by Plaintiffs in the SAC would

presumably have resulted in a truthful answer – that the Delivery Fee was not a tip.

Indeed, Plaintiffs' failure to state a NYLL claim is sharply illustrated by considering

whether the claim would be viable if the facts were that FreshDirect used the U.S. Postal Service

or Federal Express to deliver its groceries instead of UTF.  If FreshDirect did, there would be *no*

*difference* in its business operations (other than a change in the cost of deliveries): FreshDirect

would still source groceries from all over the world; FreshDirect would still accept orders over

its website; FreshDirect would still have groceries delivered to customers' doors, using a parcel

delivery service instead of UTF; and customers would still pay for separate delivery charges.  It

would be implausible to argue that the postal workers and Federal Express workers – who may

themselves periodically receive cash tips or holiday bonuses from customers – would have a

claim against the Postal Service, Federal Express, FreshDirect, or anyone else for withheld

gratuities on these facts, because no reasonable customer would think that the cost of sending a Federal Express package or putting stamps on a parcel is actually a tip for the Federal Express worker or the postal worker. A "delivery fee" is a delivery fee, regardless of who delivers it; it is not a tip or gratuity.

Thus, Plaintiffs' NYLL claim should be dismissed because their conclusory allegations do not contain "sufficient factual matter" to meet Rule 12(b)(6)'s "plausibility standard." On the contrary, the facts offered by Plaintiffs show that FreshDirect's Delivery Charge is not a gratuity and does not purport to be a gratuity. For this Court to hold otherwise would not only ignore the indisputable facts, but it would dramatically change the nature of e-commerce delivery platforms, which have always, separated "delivery fees", but never treated them as "tips" or "gratuities".

## V.      PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MCINERNEY.

Under the FLSA and NYLL, a plaintiff may bring suit against an individual where the individual is an "employer" under those statutes. *See Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999) (FLSA); *Vysovsky v. Glassman*, No. 01 Civ. 2531(LMM), 2007 WL 3130562, at *16-17 (S.D.N.Y. Oct. 23, 2007) (NYLL). Courts apply the "economic reality" test to determine whether the alleged employer possessed the power to control the workers in question. Relevant factors include: "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Herman*, 172 F.3d at 139. Courts also examine whether alleged individual employers possess operational control over the company's employment of the plaintiff. *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). To survive a motion to dismiss, a plaintiff must allege more than "mere boilerplate allegations that an individual meets the various prongs of the

economic reality test." *Bravo v. Established Burger One LLC*, No. 12 Civ. 9044(CM), 2013 WL

5549495, at *7 (S.D.N.Y. Oct. 8, 2013) (granting motion to dismiss individual defendants).

Plaintiffs' allegations against McInerney are virtually devoid of specifics and instead

simply parrot the elements of the "economic reality" test:

- "Upon information and belief, [McInerney] owns, operates and/or controls the day-to-day operations and management of Defendant FreshDirect, FreshDirect Holdings and J.T.F. [*sic*] Trucking and jointly employed Plaintiffs . . . and other similarly situated employees at all relevant times." (SAC at ¶ 21);

- "Each Defendant, either directly or indirectly, has hired and/or fired Plaintiffs . . . supervised and controlled their work schedule and conditions of employment, determined the rate and method of their payment, and kept at least some records regarding their employment." (SAC at ¶ 23);

- "Defendants Ackerman and McInerney co-founded FreshDirect in 1999 . . ." (SAC at ¶ 49);

- "Ackerman and McInerney have and exercise overall operational control over FreshDirect Holding, FreshDirect and U.T.F. Trucking, and have ownership interests in all three entities." (SAC at ¶ 51);

- "Ackerman and McInerney exercised operational control over Plaintiffs . . . through their role within FreshDirect as they, upon information and belief, made decisions that directly affect the delivery personnel's employment conditions, including the application of the delivery charge." ( SAC at ¶ 52); and

- "Ackerman and McInerney, upon information and belief, make the ultimate decisions as to how FreshDirect and U.T.F. Trucking are operated, including the compensation policies for Plaintiffs . . . and the Rule 23 Class and Collective Action Members." ( SAC at ¶ 53).

These allegations are insufficient to state a claim against McInerney.  The SAC is silent

as to when, where, or how McInerney exercised operational control and fails even make

allegations as to his job description.  Nor do Plaintiffs allege any direct contact with McInerney.

*See Sampson v. MediSys Health Network, Inc.*, No. 10 Civ. 1342(SJF)(ARL) 2012 WL 3027838,

at *5 (E.D.N.Y. Jul. 24, 2012) (claims dismissed where plaintiffs did not allege defendants ever

had direct contact with them).  Such boilerplate allegations do not state a claim for relief.  *See*

*Tracy v. NVR, Inc.*, 667 F.Supp.2d 244, 247 (W.D.N.Y. 2009) (denying leave to amend where amended complaint contained only boilerplate allegations reciting the prongs of the economic reality test, with no supporting details other than defendant's job title).  More detailed allegations than those set forth in the SAC were found wanting in *Bravo,* where the court held that allegations that individual defendants "exercised control over the terms and conditions of Plaintiffs' employment by exercising power to fire and hire, determining rate and method of pay, determining employee work schedules, maintaining employee records, and otherwise affecting the quality of employment," and that they were "Principals" of the corporate defendants, were insufficient.  2013 WL 5549495, at *6.

The *only* allegation arguably specific to McInerney is that he would "frequently walk through the FreshDirect warehouse", and would participate in meetings with delivery personnel "during which they discussed several subjects, including operational decisions on how to address the loss of trucks following Superstorm Sandy."  (SAC ¶ 54).  This allegation is woefully insufficient to suggest that McInerney, as a matter of economic reality, had operational control over the Plaintiffs.  Accordingly, the claim against him should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that their motion be granted in

its entirety and that the Court grant such other and further relief as it deems just and proper.

LITTLER MENDELSON, P.C.                    ALLEGAERT BERGER & VOGEL LLP

By: _____/s/David M. Wirtz_____        By: _____/s/David A. Berger_____
     David M. Wirtz                              David A. Berger
     Sarah E. Moss                               Louis A. Craco, Jr.
     900 Third Avenue                            Kevin L. MacMillan
     New York, New York 10022                    Lauren J. Pincus
     (212) 583-9600                              111 Broadway, 20th Floor
                                                 New York, New York 10006
                                                 (212) 571-0550

*Attorneys for Defendants Fresh Direct, LLC, Fresh Direct Holdings, Inc.,*
*U.T.F. Trucking, Inc., Jason Ackerman and David McInerney*