UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WILLARD OWENS, JEREMY ELLISON,
THOMAS LIVINGSTON, JAMES ROUSSEVE,
BASILLE NEWMAN, ZEBEDEE POUNCEY,
TONY TYLER, Individually and on Behalf of All
Other Persons Similarly Situated,

                        Plaintiffs,

      v.

FRESH DIRECT LLC, FRESH DIRECT
HOLDINGS, INC., U.T.F. TRUCKING, INC.,
JASON ACKERMAN, and DAVID MCINERNEY,
Jointly and Severally,

                        Defendants.

ECF CASE

No.: 1:14-cv-1909 (VEC) (GWG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56 AND, ALTERNATIVELY FOR DISMISSAL UNDER FED. R. CIV. P. 12(B)(6)**

---

Douglas B. Lipsky
BRONSON LIPSKY LLP
630 Third Avenue, Fifth Floor
New York, New York 10017
212.392.4772

Jeff Gottlieb & Dana Gottlieb
GOTTLIEB & ASSOCIATES
150 East 18th Street, Suite PHR
New York, New York 10003
212.228.9795

*Plaintiffs' Counsel*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

I.    FAAAA NEITHER COVERS DEFENDNATS NOR PreemptS PLAINTIFFS'
      NYLL § 196-d CLAIM........................................................................................... 2

      A.    As Their Primary Business Is Something Other Than Transportation And
            They Are Corporate family, The FAAAA Does Not Apply To
            Defendants .................................................................................................... 2

II.   AS NYLL §196-D PROVIDES STATUTORY RIGHTS THAT ARE
      INDEPENDENT OF THE COLLECTIVE BARGAINING AGREEMENT,
      SECTION 301 OF THE LMRA DOES NOT PREEMPT ITS APPLICATION ... 9

      A.    Plaintiffs' NYLL § 196-d Claim Derives From An Independent
            Substantive State Law Provision That Exists Separate From the CBA.... 10

      B.    No Interpretation of the CBA Is Necessary To Analyze Plaintiffs' Claim 12

            1.    The Expired CBA and Negotiations Regarding the Proposed CBA
                  Are Irrelevant to this Inquiry ....................................................... 12

            2.    It is Unnecessary To Interpret the CBA For the § 196-d Claim ... 12

      C.    The Tips Reporting Provision Is Neither Relevant Nor Ambiguous........ 14

            1.    The Tips Reporting Provision Is Irrelevant To This Claim .......... 14

            2.    No Ambiguity Exists Regarding The Tips Reporting Provision .. 15

III.  No Conflict Exists with the NYLL and FLSA claim............................................ 16

IV.   PLAINTIFFS HAVE SUFFICIENTLY PLED THE DELIVERY CHARGE
      CONSTITUTES A GRATUITY UNDER NYLL § 196-D................................. 18

      A.    The Delivery Charge Constitutes a Gratuity Under NYLL § 196-d......... 19

V.    PLAINTIFFS HAVE PROPERLY PLED CLAIMS AGAINST MCINERNEY 23

CONCLUSION............................................................................................................ 25

TABLE OF AUTHORITIES

CASES

*Alderman v. 21 Club Inc.*,
733 F. Supp. 2d 461 (S.D.N.Y. 2010) ...................................................................... 12, 18

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985)............................................................................................................. 10

*Am. Trucking Assn. v. I.C.C.*,
672 F.2d 850 (11th Cir. 1982) ........................................................................................... 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................. 19

*Barenboim v. Starbucks Corp.*,
698 F.3d 104 (2d Cir. 2012)............................................................................................... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................. 19

*Bilyou v. Dutchess Beer Distribs., Inc.*,
300 F.3d 217 (2d Cir. 2002)............................................................................................... 2

*Carpaenda v. Domino's Pizza, Inc. et al.*,
991 F. Supp. 2d 270 (D. Mass. 2014) ............................................................................. 20

*Cipollone v. Liggett Group, Inc.*,
505 U.S. 516 (1992)............................................................................................................. 4

*Cramer v. Consol. Freightways, Inc.*,
255 F.3d 683 (9th Cir. 2001) ............................................................................................. 17

*CSX Transp., Inc. v. Easter wood*,
507 U.S. 658 (1993)............................................................................................................. 17

*D'Arpa v. Runway Towing Corp.*,
2013 U.S. Dist. LEXIS 85697 (E.D.N.Y. June 18, 2013) ............................................. 2

*Dan's City Used Cards, Inc. v. Pelkey*,
133 S.Ct. 1769, 1778 (2013)............................................................................................... 5

*Derrico v. Sheehan Emergency Hosp.*,
844 F.2d 22 (2d Cir. 1988).................................................................................................. 12

*DiFiore v. Am. Airlines, Inc.*,
646, F.3d 81 (1st Cir. 2011) ........................................................................ 6

*Dilts v. Penske Logistics LLC*, No. 12-55705,
2014 U.S. App. LEXIS 17476 (9th Cir. Sept. 8, 2014) ................................ 6

*Dougherty v. Am. Tel & Tel Co.,*
902 F.2d 201 (2d Cir. 1990) ...................................................................... 10

*Garcia v. Allied Parking Sys.*,
752 N.Y.S.2d 316 (N.Y. App. Div. 2002) ................................................. 15

*Gonzalez v. Gan Israel Preschool,* No. 12-cv-6304 (MKB) (VMS),
2014 U.S. Dist. LEXIS 34633 (E.D.N.Y. Feb. 5, 2014).............................. 25

*Hart v. Rick's Cabaret Int'l, Inc.,*
967 F. Supp. 2d 901 (S.D.N.Y. 2013) ........................................................ 18

*Haw. Airlines, Inc. v. Norris*,
512 U.S. 246 (1994)..................................................................................... 10

*Irizarry v. Catsimatidis*,
722 F.3d 99 (2d Cir. 2013)........................................................................... 24

*Johnson v. D.M. Rothman Co.*,
861 F. Supp. 2d 326 (S.D.N.Y. 2012) ........................................................ 16

*Kassner v. 2nd Ave. Delicatessen Inc,.*
496 F.3d 229 (2d Cir. 2007)........................................................................ 19

*Kaye v. Orange Regal Med. Ctr.*,
975 F. Supp. 2d. 412 (S.D.N.Y. 2013). ................................................ 10, 13

*Kline v. Sec. Guards, Inc.*,
386 F.3d 246 (3d Cir. 2004)........................................................................ 17

*Levy v. Verizon Info. Servs.*,
498 F. Supp. 2d 586 (E.D.N.Y. 2007) ........................................................ 12

*Liken v. Domino's Pizza*, LLC,
705 F.3d 370 (8th Cir. 2013) ...................................................................... 22

*Lividest v. Bradshaw*,
512 U.S. 107 (1994)................................................................................. 9, 10

*Lorillard Tobacco Co. v. Reilly,*

533 U.S. 525 (2001) ............................................................................................... 4

*Maldonado v. BTB Event & Celebrations, Inc.*,
990 F. Supp. 2d 382 (S.D.N.Y. 2013) ................................................................. 19

*Mass. Delivery Ass'n v. Coakley*, No. 13-2307,
2014 U.S. App. LEXIS 18703 (1st Cir. Sept. 30, 2014) ................................... 7, 8

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) ............................................................................................. 4

*N.Y. State Motor Trucks Ass'n v. Pataki*, 03-cv-2386 (GBD),
2004 U.S. Dist. LEXIS 25519 (S.D.N.Y. Dec. 17, 2004) ................................... 5

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
723 F.3d 192 (2d Cir. 2013) ............................................................................... 13

*Planck v. Brookdale Hosp. Med Ctr.*,
819 F. Supp. 2d 129 (E.D.N.Y. 2011) ................................................................ 10

*Ramirez v Mansions Catering, Inc.*, No. 602381/08,
2009 N.Y. Misc. LEXIS 5661 (N.Y. Sup. Ct. Apr. 27, 2009) ........................... 19

*Rice v. Norman Williams Co.*,
458 U.S. 654 (1982) ........................................................................................... 17

*Rice v. Santa Fe Elevator Corp.*,
331 U.S. 218 (1947) ........................................................................................... 17

*Rowe v. N.H Motor Trans. Ass'n*,
552 U.S. 367 (2008) ......................................................................................... 2, 5

*Salami v. Macy's E., Inc.*,
426 F. Supp. 2d 149 (S.D.N.Y 2006) ................................................................. 16

*Samiento v. World Yacht*,
10 N.Y.3d 70 (2008) ................................................................................... *passim*

*Schwann v. FedEx Ground Package Sys.*, No. 11-cv-11094,
2013 U.S. Dist. LEXIS 93509 (D. Mass. July 3, 2013) .................................... 6, 9

*Severin v. Project OHR, Inc.*, No. 10-cv-9696 (DLC),
2011 U.S. Dist. LEXIS 99839 (S.D.N.Y. Sept. 2, 2011) ................................... 11

*United States v. Locke*,
529 U.S. 89 (2000) ............................................................................................. 17

*Vera v. Saks & Co.*,
335 F.3d 109 (2d Cir. 2003) .......................................................................................... 9, 14

*Wilk v. VIP Health Care Servs., Inc.*, No. 10-cv-5530 (ILG) (JMA),
2012 U.S. Dist. LEXIS 21630 (E.D.N.Y. Feb. 21, 2012) ................................................ 25

STATUTES
49 U.S.C. § 13505 ................................................................................................................ 2
49 U.S.C. § 14501(c) ........................................................................................................... 4

REGULATIONS
29 C.F.R. § 531.52 ............................................................................................................. 18
29 C.F.R. § 531.55 ............................................................................................................. 17
29 C.F.R. § 531.60(a) ........................................................................................................ 18

Plaintiffs submit this memorandum of law in opposition to Defendants' motion for summary judgment or, alternatively, for dismissal under Rule 12(b)(6) (the "Motion).

PRELIMINARY STATEMENT

Plaintiffs deliver groceries for the online grocer FreshDirect.  As an online grocer, FreshDirect charges its customers a fixed delivery charge for orders placed through it website.  Unfortunately, because of what FreshDirect did and did not communicate to its customers about this charge, its customers reasonably understood the charge to be Plaintiffs' gratuity.  But it was not.  Defendants retained 100% of these charges.  This had serious consequences for Plaintiffs, as customers infrequently tipped them because of this mistaken, but reasonable, belief.  What's more, Defendants violated New York Labor Law § 196-d by failing to remit those charges to Plaintiffs and violated the Fair Labor Standards Act by not including these charges when calculating their overtime rate.

With the Second Amended Complaint ("SAC"), Plaintiffs attempt to right these wrongs.  With their Motion, Defendants attempt to immunize themselves from their wrongdoing.  They argue the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), Labor Management Relations Act ("LMRA") and the FLSA preempt the NYLL claim and Plaintiffs have failed to sufficiently plead their NYLL claim.  To advance these arguments, they gloss over the governing standards, rewrite the Second SAC, rewrite the collective bargaining agreement ("CBA"), inject hyperbole whenever possible, and disagree with each court that has ruled against them.  Plaintiffs' NYLL § 196-d claim, however, survives the Motion as no preemption exists and the claim is well pled.

I.      FAAAA NEITHER COVERS DEFENDNATS NOR PREEMPTS PLAINTIFFS' NYLL § 196-D CLAIM

Two fatal flaws exist with Defendants' reliance on the FAAAA.  First, they are not covered under the FAAAA section they attempt to invoke.  Second, assuming they are covered, the FAAAA's preemptive scope does not  cover the NYLL § 196-d claim.

A.      As Their Primary Business Is Something Other Than Transportation And They Are Corporate family, The FAAAA Does Not Apply To Defendants

The Motor Carrier Act, as amended by the FAAAA, sets forth numerous regulations regarding the trucking industry.  *Rowe v. N.H. Motor Transp. Assn.*, 552 U.S. 364, 368 (2008).   These regulations apply to any employee who is within the the Secretary of Transportation's jurisdiction.  *D'Arpa v. Runway Towing Corp.*, 2013 U.S. Dist. LEXIS 85697 (E.D.N.Y. June 18, 2013).  Within this broad jurisdictional scope, the MCA carves out certain exemptions that, when met, deprives the Secretary of jurisdiction over those employees.   Once such exception is found in 49 U.S.C. § 13505, which provides the Secretary does not have jurisdiction over the "the transportation of property by motor vehicle when – (1) the property is transported by a person engaged in a business other than transportation; and (2) the transportation is within the scope of, and furthers a primary business (other than transportation) of the person." 49 U.S.C. § 13505(a)(1-2).

The Second Circuit analyzed the scope of this exemption in a sharply similar context.  *See Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 226 (2d Cir. 2002).  There, the Court held a beer and beverage wholesaler falls under § 13505 because its transportation of the beverages is merely "in furtherance" of their primary business, wholesaling, not transporting property.   The Court next explained what it means to an employer who falls under § 13505: it deprives the Secretary of jurisdiction over them as

"as specified 'in this part, over transportation of property by motor vehicle.'" *Id*. (quoting 49 U.S.C. § 13505(a)).  That is, if an employer falls under § 13505, the statutory provisions found "in this part" do not apply to them.  The Court then identified what statutes are within "this part": "49 U.S.C. §§ 13101-14914." *Id*.  The FAAAA section that Defendants invoke is found at 49 U.S.C. § 14501 – squarely within "this part."

Defendants, as in *Bilyou*, are not in the transportation business.  They are an online food and grocery retailer that sources the food for its customers, has a catering department, a bakery, and prepares ready-to-eat meals.[1]  Their primary business is the grocery business.  And because U.T.F.'s primary business is transporting FreshDirect's groceries,[2] which is "in furtherance of [this] primary [grocery] business," the Defendants are within § 13505's scope and thus outside the scope of 49 U.S.C. § 14501.

That U.T.F. is listed on Plaintiffs' paychecks as their employer does not bring Defendants back under FAAAA's umbrella.  U.T.F. is a wholly owned subsidiary of FreshDirect Holdings,[3] thereby making Defendants a "corporate family" within 49 U.S.C. § 13505(b)'s exemption.  The purpose of this exemption is to allow "a corporation [to] set up its own subsidiary for the sole purpose of providing transportation for itself and its affiliates and still claim exempt status." *Am. Trucking Assn. v. I.C.C.*, 672 F.2d 850, 851-53 (11th Cir. 1982) (explaining § 13505's predecessor).  And like § 13505(a), § 13505(b) exempts corporate families from the Secretary's jurisdiction from statutes found "under this part." 49 U.S.C. § 13505(b)(1).  Defendants thus remain outside of the FAAAA's umbrella.

---

[1] October 10, 2014 Declaration of Douglas B. Lipsky (Lipsky Dec.) Exs. A-C.
[2] Declaration of Teepo Riaz (Dkt. No. 115) ("Riza Dec.") ¶ 2.
[3] Riaz Dec. ¶ 2.

B.      FAAAA's Preemptive Scope Falls Short of Plaintiffs' NYLL Claim.

Where, like here, a party claims federal law preempts state law, it is vital to understand Congress's purpose with the federal law, as congressional intent is the "'ultimate touchstone'" of any preemption question.  *See Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 541 (2001) (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 516, 516 (1992)).  When embarking on this analysis, courts are to "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

To determine whether the FAAAA is an exception to this rule, it is necessary to start by looking at the statute itself.  *Cipollone*, 505 U.S. 516, 516 (1992).   Section 14501(c) states, in relevant part:

> (1)    General rule – Except as provided in paragraphs (2) and (3), as
> State . . . may not enact or enforce a law, regulation, or other provision
> having the force and effect of law related to a price, route, or service of
> any motor carrier . . . with respect to the transportation of property.

49 U.S.C. § 14501(c).  While the statutory language "related to" might appear at first glance to be broad enough to preempt any state law "relat[ing] to" a motor carrier's price or services, the U.S. Supreme Court has held the opposite.  Limits exist.  The FAAAA does not go so far as to preempt state laws that affect prices, routes or services in "only a tenuous, remote, or peripheral manner."  *Rowe*, 552 U.S. at 371.  In fact, the Court recently stated, "[T]he breadth of the words 'related to' does not mean the sky is the limit."  *Dan's City Used Cards, Inc. v. Pelkey*, 133 S.Ct. 1769, 1778 (2013).  State laws are, instead, preempted under the FAAAA only where they have a "significant" "impact" "related to" rates, routes or services.  *Rowe*, 552 U.S. at 371-72.  It is thus insufficient "to

-4-

merely demonstrate that a state statute affects rate, routes or services to any degree." *N.Y. State Motor Trucks Ass'n v. Pataki*, 03-cv-2386 (GBD), 2004 U.S. Dist. LEXIS 25519, at *18 (S.D.N.Y. Dec. 17, 2004).   But that is not the only limitation to its preemptive scope.

"The law must also concern a motor carrier's 'transportation of property.'" *Dan's City*, 133 S. Ct. 1769 (quoting 49 U.S.C. § 14501).   The Supreme Court recently emphasized this second phrase in distinguishing the FAAAA from the Airline Deregulation Act of 1978, which is the statute from which Congress borrowed the FAAAA's preemption provision as both statutes have similar goals: to deregulate the trucking and airline industry, respectively.   *See Dan's City Used Cars, Inc.*, 133 S.Ct. at 1775.   The Court explained this added phrase, "transportation of property," "massively limits" FAAAA's preemptive scope.   *Dan's City*, 133 S. Ct. at 1778.   With this restriction, "for purposes of FAAAA preemption, it is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's 'transportation of property.'" *Id*. at 1778-79.   Drawing on that additional caveat, the Court held a plaintiff's claims for negligence and breach of statutory duties related to a towing company's improper disposal of a car were not preempted because the claims related to conduct that occurred <u>after</u> the car was towed, not to the towing itself.   *Id.* at 1779.

Consistent with this limited scope, the Court held laws of general application that affect truck drivers "only in their capacity as members of the public" and have nothing to do with regulating "carriage of property," like NYLL § 196-d, do not trigger preemption. *See Rowe*, 552 U.S. at 375.   This understandably follows since nearly every form of state

regulation carries some economic cost.

Other courts have similarly held the FAAAA does not preempt laws of general application.  In *Dilts v. Penske Logistics LLC*, No. 12-55705, 2014 U.S. App. LEXIS 17476 (9th Cir. Sept. 8, 2014), the Ninth Circuit held that "generally applicable background regulations that are several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations, are not preempted." *Id.* at * 14.  A District Court of Massachusetts also recently rejected a similar preemption argument.  In *Schwann v. FedEx Ground Package Sys.*, No. 11-cv-11094, 2013 U.S. Dist. LEXIS 93509 (D. Mass. July 3, 2013), a class of FedEx delivery drivers claimed they were misclassified as independent contractors under the Commonwealth's Independent Contractor Statute and thereby owed overtime.  Even though they were involved in the "transportation of property" and this statute would increase FedEx's operation costs, the court rejected FedEx's FAAAA preemption argument because the Commonwealth's statute "apple[ies] broadly to all employees of business located in the Commonwealth, has nothing do with the regulating the 'carriage of property,'" and is silent on how FedEx drivers are supposed to deliver packages.  *Id.* at *9.

Less than two weeks ago, the First Circuit revisited this issue with the benefit of the Court's guidance in *Dan's City* and, in doing so, confirmed the FAAAA's preemption provision does not stretch to cover Plaintiffs' NYLL § 196-d claim.  *See Mass. Delivery Ass'n v. Coakley,* No. 13-2307, 2014 U.S. App. LEXIS 18703 (1st Cir. Sept. 30, 2014). It held that "we understand *Dan's City* to ensure that FAAAA preemption does not apply when a state statute concerns motor carriers in matters unrelated to the transportation of property," and would therefore exclude statutes that relate to motor carriers "after the

transportation of property has ended." *Id.* at *25-26.  This holding, logically, extends to excluding statutes that relate to activities before the transportation begins.

For several reasons, § 196-d does not "relate to a price route, or service of any motor carrier . . ." nor does it "concern a motor carrier's transportation of property."  To begin with, it, like the prevailing wage law at issue in *Dilts v. Penske Logistics LLC*, is a law of general application that applies to all employees who work in hundreds of industries within the State of New York.  It likewise does not set prices, mandate or prohibit certain routes or tell motor carriers what services are permitted.  It is at most a background law for all employers doing business in New York.  And while the statute may increase their cost of doing business, it does not bind them to a price.

Also, the delivery charge does not relate to transporting property, but to the services Defendants provide as an online grocer.   The First Circuit decision that Defendants heavily cite, *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81 (1st Cir. 2011), reinforces this conclusion.  There, American Airlines contracted with a third party, GS Secure Staff, to provide curbside check-in service.  646 F.3d 81.  To determine whether that service "related to" airline operations and brought the tips claim under the ADA's preemption provision, the First Circuit did not focus on whether the transportation of bags at curbside is, itself, the service at issue; the court took a step back and looked at what is the overall service being provided: being an airline carrier.  *DiFiore*, 646 F.3d at 83, 88.  It is likewise necessary to take a step back here and look at what overall service Defendants are providing.  It is not transporting property; it is being an online grocer.  The delivery charge thus relates to that overall service.  Defendants' description of what the charge covers buttresses this point: handling the food, preparing the items for each

order, assembling boxes, and placing items into trucks.[4]  What's more, *DiFiore* highlights that it is immaterial in this big picture analysis that U.T.F. is a separate entity that delivered the groceries, as American Airlines similarly used a thirty party in connection with their overall service of being an airline carrier.

The First Circuit's big picture approach in *DiFiore* likewise confirms the delivery charge does not relate to the price of transporting property.  There, the court held the $2 bag fee should not be looked at in isolation, but was, instead, an "ancillary" cost of the overall airline ticket price and thus sufficiently "related to."  *Id.* at 87.  The same holds true here.  The delivery charge is an "ancillary" cost of the total price for the groceries.

This analysis squares with Congress' purpose with the FAAAA.  That is, how would applying NYLL § 196-d in this context frustrate Congress' objective of deregulating the trucking industry?  Defendants have yet to answer this question.

Next, Defendants' description of the delivery charge, as discussed above, shows the charge covers services provided <u>before</u> the groceries are transported.  As the First Circuit recently held, this distinction places the charge outside of the preemptive scope.  *See Mass. Delivery Ass'n.*, 2014 U.S. App. LEXIS 18703 at *25-26 (holding statutes that relate to services after the property is transported are not preempted).

Defendants, however, argue NYLL § 196-d will have a "significant impact" on its prices and will cause them to incur substantial damages if Plaintiffs prevail.  Like FedEx's argument in *Schwann*, that argument "may have seemed plausible prior to the Supreme Court's decision in *Dan's City*," but "it cannot seriously be contended" that NYLL § 196-d "concerns a motor carrier's transportation of property."  *Schwann*, 2013

---

[4] Defs. Mem. at 19, n.26.

U.S. Dist. LEXIS at *11.  Additionally, the fact Defendants may face significant damages if Plaintiffs prevail is not grounds for preemption.  Indeed, Defendants rely more on math than governing authority to advance this tenuous argument.    At bottom, Plaintiffs' NYLL § 196-d claim is free from FAAAA preemption.

II.        AS  NYLL  §196-D  PROVIDES  STATUTORY  RIGHTS  THAT  ARE  INDEPENDENT  OF  THE  COLLECTIVE  BARGAINING  AGREEMENT,  SECTION 301 OF THE LMRA DOES NOT PREEMPT ITS APPLICATION

NYLL § 196-d creates a statutory right that exists separate and apart from any collective bargaining agreement.  This claim is thus immune from preemption.

Where, like here, state law confers a statutory right to bring a claim that exists independent of a CBA, preemption under Section 301 of the LMRA does not apply.  *See Lividest v. Bradshaw*, 512 U.S. 107, 123 (1994) (holding Section 301 preemption does not apply when state law confers an independent statutory right to bring a claim); *Vera v. Saks & Co.*, 335 F.3d 109, 115 (2d Cir. 2003) (explaining if a state "prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rights or rules would not be preempted by section 301"). Indeed, the "bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Lividest*, 512 U.S. at 124; *Vera*, 335 F.3d at 114.  Section 301 will likewise not preempt a state law claim even if "resolving a dispute under a state law claim and the [CBA] would require addressing the precisely same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself." *Kaye v. Orange Regal Med. Ctr.*, 975 F. Supp. 2d. 412, 421 (S.D.N.Y. 2013).   As such, even if the alleged conduct violates a CBA, preemption does not exist if the conduct supports an independent state law claim.

*See Planck v. Brookdale Hosp. Med Ctr.*, 819 F. Supp. 2d 129, 134 (E.D.N.Y. 2011) (holding plaintiffs' NYLL claims for unpaid minimum wage and overtime were not preempted even though the conduct also violated the CBA).

Section 301, instead, preempts the application of state laws in only two limited circumstances – neither of which exists here.  The first situation occurs when a state law claim alleges a violation of a particular CBA provision.  *See Haw. Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994).  The other situation occurs when resolving the state law claim is "substantially dependent" upon analyzing the CBA's terms.  *Vera*, 335 F.3d at 114 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)).  This burden is not met if it is necessary only to refer to the "the CBA for information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled." *Vera*, 335 F.3d at 115.  A higher burden exists.  It requires that the CBA to be "inextricably intertwined" with the state claim, requiring analysis and interpretation of the agreement, such as when the relevant term is ambiguous.  *Dougherty v. Am. Tel & Tel Co.,* 902 F.2d 201, 203-04 (2d Cir. 1990).

A.    Plaintiffs' NYLL § 196-d Claim Derives From An Independent Substantive State Law Provision That Exists Separate From the CBA

Plaintiffs' NYLL § 196-d claim is entirely independent of the CBA.  They do not allege any particular CBA provision violates the NYLL.   Nor do they allege that Defendants violated the CBA itself.  Their allegations focus, instead, on issues that are not found anywhere in the CBA: that customers reasonably believed the charges to be Plaintiffs' gratuities and why that is; and Defendants' policy of retaining 100% of those charges.  Plaintiffs therefore could not have asserted a claim under the CBA even if they wanted to.  Indeed, although they attach the entire CBA to their Motion, Defendants

noticeably do not identify any provision that Plaintiffs could have invoked to remedy this violation – even though this is their burden.  This is unsurprising as Plaintiffs' remedy for this unlawful policy is found in one place:   NYLL § 196-d. What's more, even if Plaintiffs could have asserted a claim under the CBA, that, by itself, does not trigger preemption.  *See Severin v. Project OHR, Inc.*, No. 10-cv-9696 (DLC), 2011 U.S. Dist. LEXIS 99839, at *12 (S.D.N.Y. Sept. 2, 2011) ("Even if resolving a dispute under a state law claim and the [CBA] would require addressing the precisely same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is intendant of the agreement for § 301 pre-emption purposes.").

A recent district court decision that addressed this very issue underscores the independent nature of Plaintiffs' claim.  In *Alderman v. 21 Club Inc.*, a class of servers asserted a NYLL § 196-d claim for the automatic gratuities defendants charged their customers, and the defendants argued Section 301 preempts this claim because the claim is actually asserting a violation under the CBA, which guaranteed the servers 18% of the gratuities, and the court must thus interpret the CBA to resolve the claim.  *Alderman v. 21 Club Inc.*, 733 F. Supp. 2d 461, 468 (S.D.N.Y. 2010).  The district court rejected that argument.  It held – even though the CBA refers to the very issue – the state claim is wholly independent of the CBA because the class members are seeking 100% of the gratuities and the claim can be resolved without interpreting the CBA.  *Id*. at 469. Plaintiffs' claim here is even further removed from the CBA, as it does not even discuss their right to any of the delivery charges.  Plaintiffs' NYLL § 196-d claim exists separate and independent from the CBA.

B.      No Interpretation of the CBA Is Necessary To Analyze Plaintiffs' Claim

Defendants try to inject the CBA into the forefront of this claim by relying on expired and not-yet-effective CBAs, rewriting the SAC and overstating the relevance of one CBA term.  But the CBA is immaterial to the § 196-d claim.

1.      The Expired CBA and Negotiations Regarding the Proposed CBA Are Irrelevant to this Inquiry

Defendants focus heavily on the terms and negotiations of the CBA that expired in 2007, and the August 2014 negotiations on the proposed CBA to argue Section 301 preempts the § 196-d claim.[5]  Yet Section 301's "preemptive force applies only where state law claims coincide with current collective bargaining agreements."  *Levy v. Verizon Info. Servs.*, 498 F. Supp. 2d 586, 599 (E.D.N.Y. 2007); *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 25 (2d Cir. 1988) ("[S]ection 301 has no application in the absence of a currently effective CBA"); *Kaye*, 975 F. Supp. 23d at 421 (holding the CBA entered into on January 1, 2008 did not preempt plaintiff's claims prior to January 1, 2008).  The CBA that expired in 2007 is thus irrelevant.  *See Derrico*, 844 F.2d at 25; *Kaye*, 975 F. Supp. 2d. at 421.  The August 2014 negotiations are similarly irrelevant because they post-date the Complaint and focus, instead, on a proposed, not-yet-effective CBA.  *See Kaye*, 975 F. Supp. 2d. at 425 (holding a memorandum of understanding that post-dates the alleged conduct cannot form the basis of a 301 preemption argument since it was not effective during the relevant time period).

2.      It is Unnecessary To Interpret the CBA For the § 196-d Claim

In further attempting to inject the CBA into the § 196-d claim, Defendants rewrite the SAC to fit their narrative.  They claim Plaintiffs are referencing the CBA when they

_____

[5] Defs. Mem. at 8, 10-11.

reference Defendants' policies, practices and uniform compensatory policy and have artfully plead around the CBA.[6] But this is not a matter of artful pleading. The SAC is silent on the CBA because the CBA is silent on the critical issues that underlie the § 196-d claim: what Defendants communicated to their customers about the delivery charges; that customers reasonably believed these charges to be Plaintiffs' gratuities; and that Defendants retained 100% of the charges. It would therefore not advance this claim to reference the CBA – directly or indirectly. And Defendants' attempt to rewrite the SAC runs counter to the maxim that Plaintiffs are "master of the complaint and may assert state law causes of action that are independent of the CBA." *See Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 203 (2d Cir. 2013).

Defendants' argument is further untenable as it would create an impenetrable shield from unionized employees asserting claims for unpaid wages under state law. That is, they argue Plaintiffs' claim is preempted because it arises under their "compensation policy" and the only such policy exists in the CBA, which "cannot be changed without negotiations." Yet every unpaid wage claim concerns a "compensation policy" – whether it is written or established practice – and every CBA contains compensation terms that "cannot be changed without negotiations." Yet Section 301 does not preempt every claim for unpaid wages by unionized employees. *See Vera*, 335 F.3d at 114.

Finally, *Vera v. Saks & Co.*, the case Defendants cite, reinforces that no need exists for this Court to "undertake substantial interpretation" of the CBA.[7] There, plaintiffs challenged whether a particular CBA provision altered a common law rule relating to commission payments and resolving this claim, the court held, would require

---

[6] Defs. Mem. at 8.
[7] Defs. Mem. at 9.

substantially interpreting the CBA to determine whether the parties had agreed to alter common law and to violate statutory law.  335 F.3d at 112.  Here,  Plaintiffs are not challenging any CBA provision for the axiomatic reason no provision exists to challenge. No interpretation – substantial or otherwise – is therefore necessary.

        C.      <u>The Tips Reporting Provision Is Neither Relevant Nor Ambiguous</u>

        1.      <u>The Tips Reporting Provision Is Irrelevant To This Claim</u>

To support their argument that a CBA provision that concerns delivery personnel reporting their tips is somehow relevant to and "inextricably intertwined" with the § 196-d claim, Defendants rely upon false and unsubstantiated assumptions.  Their argument crumbles absent these assumptions.

To begin with, Defendants falsely assume that the parties' understandings of how the customers perceived the delivery charge are relevant to this claim.  They are not. This statutory claim looks at how the reasonable customer perceived the charge. *Samiento v. World Yacht*, 10 N.Y.3d 70, 79 (2008) ("the standard under which a mandatory charge or fee is purported to be a gratuity [is] weighed against the expectation of the reasonable customer.").

They next falsely assume the negotiations leading up to and the content of the now-expired 2007 CBA, and the August 2014 negotiations regarding the proposed CBA are relevant.  They are not.  As explained above, the presently effective CBA is the only one that is relevant to an LMRA 301 preemption analysis.

Defendants also assume the delivery personnel were always aware of their rights under NYLL § 196-d and spring board off of that assumption to claim this assumed knowledge informed the negotiations regarding the tips reporting provision.  Yet they

offer no proof exists of this assumed knowledge.  It is thus irrelevant whether they filed any grievance or did or did not report the delivery charges as tips.

Defendants then falsely assume the CBA's provision on the delivery personnel's wages is relevant to this claim.  It is not.  Plaintiffs are not claiming Defendants failed to pay them the agreed upon rate or based upon any other agreed upon term, which contrasts with other cases where those claims were asserted and held to be preempted under 301. *See, e.g., Vera*, 335 F.3d at 112 ("Plaintiff . . . alleg[es] that the unidentified returns policy as set forth in CBA and defendant's actions in compliance with this policy violate [NYLL § 193] and the common law"); *Garcia v. Allied Parking Sys.*, 752 N.Y.S.2d 316, 317-18 (N.Y. App. Div. 2002) (holding plaintiff's claim for failure "to pay him overtime at the rate provided in his [CBA]" was preempted since the dispute centered on how to interpret the wage schedule in the CBA).

Finally, Defendants incorrectly assume the Court must, to resolve this case, delve into the parties' negotiations on what would be communicated to customers regarding the delivery charge.  These negotiations are ultimately irrelevant, as this claim does not allege Defendants failed to communicate what was agreed to.

2.   No Ambiguity Exists Regarding The Tips Reporting Provision

The tips reporting provision is easily understood:  employees are to report the tips they receive.[8]  That's it.  No ambiguity.  No interpretation needed.  This provision is far removed from what courts have held to be sufficiently ambiguous.  *See Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 333 (S.D.N.Y. 2012) (preempting state law claims, the resolution of which depended on resolving a dispute as to whether plaintiffs qualified

---

[8] Williams Dec. Ex. 3, p. 9 at ¶ 4.3

as "'Hi-Lo Operators' or 'grandfather employees' as those terms [we]re used in the CBA, and the plain language of the CBA [did] not indicate a clear answer,"); *see also Salami v. Macy's E., Inc.*, 426 F. Supp. 2d 149, 155 (S.D.N.Y 2006) (preempting state law claims because the CBA detailed the requirements for when employees are eligible for vacation benefits and the parties disputed whether plaintiff met those requirements).

Defendants attempt in two different ways to transform this easily understood provision into something that "exemplifies ambiguity." First, they effectively argue that because the parties disagree on whether the delivery charge constitutes a tip under § 196-d, ambiguity exists with respect to the tips reporting provision. This argument overlooks that the focus here is on how the reasonable consumer perceived the fee – rendering irrelevant either party's perception. *See Samiento*, 10 N.Y.3d at 79. Furthermore, under their reasoning, CBA provisions will automatically become ambiguous whenever parties disagree over their meaning or application. That is not the case.

What's more, despite claiming this provision "exemplifies ambiguity," Defendants do not offer any actual examples of the parties disagreeing over its meaning. They, instead, offer hypothetical disagreements. But a hypothetical connection between a state claim and a CBA is insufficient for preemption. *See Kline v. Sec. Guards, Inc.,* 386 F.3d 246, 256 (3d Cir. 2004) (explaining a hypothetical connection between a claim and a CBA term is not enough to preempt the claim); *Cramer v. Consol. Freightways, Inc.,* 255 F.3d 683, 691-92 (9th Cir. 2001) (same).

III.     NO CONFLICT EXISTS WITH THE NYLL AND FLSA CLAIM

The FLSA and NYLL have independent frameworks, which apply to the delivery charges in different ways and work in harmony. No conflict preemption exists.

Under the U.S. Constitution's Supremacy Clause, conflict preemption exists only "when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objective[s] of Congress." *United States v. Locke*, 529 U.S. 89, 109 (2000).  State law is in "irreconcilable conflict" with federal law, and hence preempted by federal law, when compliance with the state statute would frustrate the federal scheme's purpose.  *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982).  To avoid unintended encroachment upon a state's authority, courts interpreting a federal statute that pertains to a subject traditionally governed by state law "will be reluctant to find pre-emption" absent clear Congressional intent. *CSX Transp., Inc. v. Easter wood*, 507 U.S. 658, 663 (1993).  A preemption analysis thus starts with the presumption Congress did not intend to supersede state law.  *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

The regulation Defendants cite does not deviate from this presumption.  29 C.F.R. § 531.55 focuses on regulating the way in which mandatory fees are to be treated by employers who claim a "tip credit" against the statutory minimum wage under 29 U.S.C. §§ 203(m) and (t).  *See Hart v. Rick's Cabaret Int'l, Inc.,* 967 F. Supp. 2d 901, 929 (S.D.N.Y. 2013).  Under this regulatory scheme, employers may only take a "tip credit" against their minimum wage obligation under § 203(m) with respect to a "tip": "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." 29 C.F.R. § 531.52.  But they may not do so for a "compulsory charge for service . . . even if distributed by the employer to his employees." *Id.* § 531.55(a).  The service charges are, instead, treated as gross revenues the employer receives and paid out as "wages" for this limited purpose.  *Id.* § 531.55(b).  § 531.55 therefore does not address

whether the employer must distribute the money in the first place, and is irrelevant here as no allegation exists that Defendants are claiming a tip credit.

Furthermore, the two statutes do not conflict. Although not analyzing the preemption issue, after acknowledging the textual difference between how the FLSA and NYLL treat tips, the Second Circuit explained "§196-d and the FLSA do not overlap fully in their text and interpretation [on tips]." *See Barenboim v. Starbucks Corp.,* 698 F.3d 104, 112 (2d Cir. 2012). Judge Griesa also explained how these two statutes do not fully overlap: § 196-d guarantees employees' rights to receive 100% of the mandatory fee; and "[s]ince federal law counts service charges as wages, they must be included in the employee's total remuneration for purposes of determining [the employee's] pay rate for overtime purposes under the FLSA." *Alderman*, 733 F. Supp. 2d at 468-69, 471 (citing 29 C.F.R. § 531.60(a)).

Defendants, of course, disagree with this position and with each court that has ruled against their position. The lack of support for their position is unsurprising as their argument would lead to a rather ironic conclusion: a federal regulatory scheme designed to expand the protection of workers being used to reduce their protection under state law.

IV.   PLAINTIFFS HAVE SUFFICIENTLY PLED THE DELIVERY CHARGE CONSTITUTES A GRATUITY UNDER NYLL § 196-D

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen Inc,*. 496 F.3d 229, 237 (2d Cir. 2007).

A.    The Delivery Charge Constitutes a Gratuity Under NYLL § 196-d

NYLL § 196-d provides, in relevant part, that "[n]o employer . . . shall . . . retain any part of a gratuity or of any charge purported to be a gratuity for an employee."  New York courts apply a "holistic assessment of how a reasonable customer would understand, in context, a particular surcharge, and whether it is 'purported to be a gratuity.'"  *Maldonado v. BTB Event & Celebrations, Inc.*, 990 F. Supp. 2d 382, 389 (S.D.N.Y. 2013).  In *Samiento v. World Yacht Inc.*, the New York Court of Appeals held a mandatory service charge may constitute a "charge purported to be a gratuity" within § 196-d's meaning "when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for employees."  10 N.Y.3d at 81.  This includes charges that are "mandatory, and not subject to negotiation."  *Id.* at 79l.  Whether this test is met is "weighed against the expectation of the reasonable customer."  *Id.*  The focus is thus not on "what defendants intended when they used" the terms, "but the meaning that their clients attributed to them under the reasonable patron standard."  *Ramirez v Mansions Catering, Inc.*, No. 602381/08, 2009 N.Y. Misc. LEXIS 5661, at *7 (N.Y. Sup. Ct. Apr. 27, 2009).

In a sharply similar case, a District Court of Massachusetts considered whether Domino's Pizza violated Massachusetts's Tip Law, which is analogous to § 196-d, by retaining 100% of the $2.50 delivery charge it charges customers for every delivery.  *See Carpaenda v. Domino's Pizza, Inc. et al.*, 991 F. Supp. 2d 270, 271 (D. Mass. 2014).  In denying defendants' motion to dismiss, the court held a "reasonable customer would interpret" the delivery charge to be a tip based on a few factors:  unlike other online ordering websites that permit it, Domino's website does not permit customers to add a tip

-19-

in an amount of their choosing to the total price; and $2.50 is "an amount comparable to what an average customer might pay as a tip." *Id.* at 275. The court reached this holding despite Domino's website stating, "[A]ny delivery charge is not a tip paid to your driver. Please reward your driver for awesomeness," and the delivery charge being a separate line item on the order. *Id.* at 271. The same conclusion should be reached here.

FreshDirect charges its customers an automatic "delivery charge," the amount of which varies depending upon the location, with the company charging more the farther away the delivery.[9] But FreshDirect does not explain to its customers what this charge covers, such as fuel, tolls, or other overhead expenses, or that it is retaining any of this charge.[10] Customers can, however, decipher on their own the charge does not include fuel as they are separately charged a fuel surcharge with each delivery.[11] The company also fails to explicitly state, unlike in *Domino's Pizza*, the charge does not include the delivery personnel's gratuity.[12] On top of this, like in *Domino's Pizza*, FreshDirect's website does not allow for customers to add a gratuity in an amount of their choosing.[13] And further similar to *Dominos' Pizza*, the delivery charge is within the range of what reasonable customers would expect to pay as a tip for this delivery service.[14]

Considering these factors, FreshDirect's website would have the reasonable customer believe the delivery charge to be the delivery personnel's gratuity.[15] FreshDirect's customers own words confirm this to be true. They have expressed on

---

[9] SAC ¶ 91.
[10] *Id.* ¶ 93.
[11] *Id.*
[12] *Id.*
[13] *Id.* ¶ 97.
[14] *Id.* ¶ 96.
[15] *Id.* ¶ 99.

numerous occasions and in numerous ways to the Named Plaintiffs their reasonable, but mistaken, belief the delivery charge is a gratuity: "We put the tip for you on the computer"; "Did you get the delivery charge I left online"; "Are you receiving the tip I paid for with my credit card"; "Enjoy the $6.00"; and "Did you get the delivery fee".[16] The Named Plaintiffs are not the only ones to hear these comments. They know, from speaking with other delivery personnel, that customers made similar remarks to them.[17] Furthermore, the customers' actions reflect their perception of the charge. They infrequently tipped the delivery personnel.[18]

At bottom, these allegations, when assumed true and given all favorable inferences, go beyond what was held to be sufficient in *Domino's Pizza*, 991 F. Supp. 2d 270. And they establish a reasonable customer believed the delivery charge to be a gratuity within the meaning of *Samiento v. World Yacht,* 10 N.Y.3d at 81. Plaintiffs have accordingly sufficiently pled their NYLL § 196-d claim.

Defendants' arguments do not change this fact. As an overall manner, they fail to accept the allegations as true. For example, they challenge whether Plaintiffs responded to any of the cited comments and cite *Liken v. Domino's Pizza*, LLC, 705 F.3d 370, 374 (8th Cir. 2013) to establish the relevancy of any such response. That case, unlike here, considered that issue at the class certification stage.

Next, they argue no reasonable customer would assume the mandatory delivery charge to be a gratuity since it is a fixed fee, regardless of the order size or where it is being delivered. But this argument overlooks that customers hold this belief because the

---

[16] *Id.* ¶¶ 102-108.
[17] *Id.* ¶ 109.
[18] *Id.* ¶¶ 110-112.

amount of the charge reflects what they would reasonably expect to pay as a tip for this service[19] – like paying a $2.50 fee for pizza delivery. And the customers' quotes and infrequent tipping reinforce this allegation.[20]

Defendants' reliance on their website is equally unavailing to defeat this claim. They cite a particular webpage as proof they sufficiently explained the charge's purpose.[21] The particular section on that webpage, however, describes only the delivery process and not, as Defendants contend, what the charge covers. They also point to the language advising customers they do not have the technology to add tips to the order and that tipping is optional.[22] This is not enough. Indeed, Domino's Pizza similarly advised its customers that tipping is optional. 991 F. Supp. 2d at 271. Also, this argument ignores what FreshDirect's customers understood this language to mean: the company does not have the technology to add a tip in the amount of their choosing, which is over and above the delivery charge. The customer statements and actions buttress this belief.

Defendants attempt to minimize the effect of these fourteen customer quotes, but they trip over their own feet in doing so. In their June 2, 2014 motion to dismiss, they argued Plaintiffs' failure to identify instances when customers expressed their belief regarding the charge renders the claim conclusory.[23] Confronted with fourteen examples, Defendants characterize these customers as a few unsophisticated, inattentive or unreasonable individuals.[24] Yet these are not the only comments. In fact, other delivery

---

[19] *Id.* ¶ 96.
[20] *Id.* ¶¶ 102-108, 111-112.
[21] Defs Mem. at 18-19, n.26.
[22] Defs. Mem. at 18 (citing SAC ¶ 97).
[23] Dkt. No. 50 at 20.
[24] Defs. Mem. at 20.

personnel heard similar comments from other customers.[25]

Defendants again trip over their feet in arguing no reasonable customer could so perceive the charge since some customers do not pay the fee, as they are SNAP customers, or pay a discounted fee.  As Defendants point out, the standard is not what every customer would believe, but what the reasonable customer believes.[26]  The mere fact some customers do not pay the fee does not take away from how the reasonable customer perceives the fee.  On top of this, the webpage Defendants cite does not establish that every customer is aware of SNAP or the discounted option.

Defendants' final effort, the FedEx example, does not carry the day, as it injects a hypothetical that substantially deviates from this claim's focus.  The focus here is not on how Defendants delivered the groceries but on what the company did and did not communicate to its customers about its delivery personnel and the delivery charge, and giving customers the ability to add to their order a gratuity in amount of their choosing.  Plaintiffs suggest a more apt example:  a pizza company charges a $2.50 delivery charge per delivery, an amount that is within range of what a reasonable customer would pay as a tip to a driver; and the company does not give customers the ability to add a gratuity in the amount of their choosing when ordering the pizza online.

V.        PLAINTIFFS HAVE PROPERLY PLED CLAIMS AGAINST MCINERNEY

Defendant David McInerney meets the "employer" definition under the Second Circuit's recently articulated standard in *Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013).  There, the Court explained it applies the four-part economic reality test, looks to the totality of the circumstances, and considers the putative employer's level of

---

[25] SAC ¶ 109.
[26] Defs. Mem. at 18.

"operational control" to determine whether he or she qualifies as an "employer." *Id*. at 105-17. Regarding operational control, the Court held "to be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment," and "[i]t is appropriate . . . to require some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation – even if this appears to establish a higher threshold for individual liability than for corporate 'employer' status." *Id*. at 109. "Evidence indicating an individual's direct control over the plaintiff employees" is not the "only evidence . . . to be considered"; "[i]nstead, evidence showing an individual's authority over management, supervision, and oversight of a company's affairs in general is relevant to the totality of the circumstances in determining the individual's operational control of the company's employment of the plaintiff employees." *Id*. at 110.

The allegations here establish McInerney is an employer: he has the authority to do and does and exercise operational control over the Defendants' affairs, including deciding how the entities operate;[27] he makes decisions that affect Plaintiffs' employment conditions, including compensation policies;[28] he frequently speaks with delivery personnel regarding operational decisions;[29] and he has the authority to hire and fire Plaintiffs[30]. He thus meets the "employer" definition. *See Gonzalez v. Gan Israel Preschool,* No. 12-cv-6304 (MKB) (VMS), 2014 U.S. Dist. LEXIS 34633, at *27-32 (E.D.N.Y. Feb. 5, 2014) (holding individual defendant to be an "employer" because

---

[27] SAC ¶¶ 51, 53
[28] *Id.* ¶¶ 52, 53.
[29] *Id.* ¶ 54.
[30] *Id.* ¶ 23.

complaint alleges he "had the power to hire and fire employees," "supervised and controlled employee work schedules or conditions of employment for," "determined the rate and method of payment for employees"; and "maintained employment records."); *Wilk v. VIP Health Care Servs., Inc.*, No. 10-cv-5530 (ILG) (JMA), 2012 U.S. Dist. LEXIS 21630, at *27 (E.D.N.Y. Feb. 21, 2012) (denying motion to dismiss where plaintiff alleged that company's officer and shareholder had "influence over hiring and firing decisions, and the terms and conditions of [plaintiff's] employment—including how, when, and how much [plaintiff] was to be paid").

<u>CONCLUSION</u>

For the foregoing reasons, it is respectfully requested the Court (1) deny Defendants' Motion; and (2) grant any additional further relief, including leave to amend if any portion of Defendants' Motion is granted.

Dated: October 10, 2014
      New York, New York

                    Respectfully submitted,
                    BRONSON LIPSKY LLP

                    By: <u>s/ Douglas B. Lipsky</u>
                    Douglas B. Lipsky
                    630 Third Avenue, Fifth Floor
                    New York, New York 10017
                    212.392.4772

                    *Attorneys for Plaintiffs*