UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
WILLARD OWENS, JEREMY ELLISON,                  :
THOMAS LIVINGSTON, JAMES ROUSSEVE,              :
BASILLE NEWMAN, ZEBEDEE POUNCEY,                :
TONY TYLER, Individually and on Behalf of All   :
Other Persons Similarly Situated,               :
                                                :
                                   Plaintiffs,  :   14 Civ. 1909 (VEC) (GWG)
                                                :
                  - against -                   :
                                                :
FRESH DIRECT LLC, FRESH DIRECT                  :
HOLDINGS, INC., U.T.F. TRUCKING, INC.,          :
JASON ACKERMAN, and DAVID                       :
MCINERNEY, Jointly and Severally,               :
                                                :
                                   Defendants.  :
---------------------------------------------------------------- x


**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION, PURSUANT TO FED. R. CIV. P. 56, FOR SUMMARY JUDGMENT,
AND ALTERNATIVELY, FOR DISMISSAL, PURSUANT TO FED. R. CIV. P. 12(b)(6)**


| | |
|---|---|
| David M. Wirtz | David A. Berger |
| Sarah E. Moss | Louis A. Craco, Jr. |
| LITTLER MENDELSON, P.C. | Kevin L. MacMillan |
| 900 Third Avenue | Lauren J. Pincus |
| New York, New York 10022 | ALLEGAERT BERGER & VOGEL LLP |
| (212) 583-9600 | 111 Broadway, 20th Floor |
| | New York, New York 10006 |
| | (212) 571-0550 |

*Attorneys for Defendants Fresh Direct, LLC, Fresh Direct Holdings, Inc.,
U.T.F. Trucking, Inc., Jason Ackerman and David McInerney*


October 24, 2014

Table of Contents

Page

Table of Authorities ..................................................................................................................... ii

I.    PLAINTIFFS' NYLL CLAIM IS PREEMPTED BY THE FAAAA. ................................1

       A.    The DOT Has – and Regularly Exercises – Jurisdiction Over UTF........................1

       B.    As In *DiFiore*, Plaintiffs' NYLL § 196-d Claim Is Preempted By the FAAAA ...............................................................................................................2

II.    PLAINTIFFS' § 196-D CLAIM IS PREEMPTED BY LMRA § 301 .............................. 4

       A.    Section 301 Preempts Plaintiffs' Claim that the CBAs Violate § 196-d .................4

       B.    The Tips Provision is Ambiguous ...........................................................................5

       C.    The Strong Link Between Plaintiffs' § 196-d Claim, the CBAs, and the Bargaining History, Makes the Review Prohibited by § 301 Essential ...................................................................................................................5

III.    PLAINTIFFS' OPPOSITION CONCEDES THAT THEIR §196-D CLAIM IS PREEMPTED BY THE FLSA IF § 531.55 APPLIES TO THEM, AND IT DOES. ................................................................................................................................ 6

IV.    PLAINTIFFS FAIL TO REBUT DEFENDANTS' SHOWING THAT THE DELIVERY FEE IS NOT A GRATUITY ........................................................................ 8

       A.    Neither Plaintiffs' Conclusory Allegations nor the Amount of the Delivery Fee Show That it "Purport[s] To Be" a Gratuity .......................................8

       B.    Plaintiffs Cannot Overcome Defendants' Showing That FreshDirect's Website Establishes That the Delivery Fee is Not a Tip ..........................................9

V.    PLAINTIFFS FAIL TO REBUT DEFENDANTS' SHOWING THAT THE SAC FAILS TO PLEAD A CLAIM AGAINST MCINERNEY ...................................... 10

Table of Authorities

Page(s)

Cases

*Alderman v. 21 Club Inc.*,
733 F. Supp. 2d 461 (S.D.N.Y. 2010)................................................................................. 5, 6

*Am. Trucking Ass'n, Inc. v. I.C.C.*,
672 F.2d 850 (11th Cir. 1982) ................................................................................................ 2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................. 8

*Baez v. Wells Fargo Armored Service Corp.*,
938 F.2d 180 (11th Cir. 1991) ................................................................................................ 1

*Barenboim v. Starbucks Corp.*,
698 F.3d 104 (2d Cir. 2012)................................................................................................. 6, 7

*Bilyou v. Dutchess Beer Distribs., Inc.*,
300 F.3d 217 (2d Cir. 2002).................................................................................................... 2

*Bravo v. Established Burger One LLC*,
No. 12 Civ. 9044(CM), 2013 WL 5549495 (S.D.N.Y. Oct. 8, 2013) ......................... 10

*Carpaneda v. Domino's Pizza, Inc.*,
991 F. Supp.2d 270 (D. Mass. 2014) ............................................................................... 9, 10

*Christensen v. Harris Cnty.*,
529 U.S. 576 (2000).................................................................................................................. 6

*Cramer v. Consol. Freightways, Inc.*,
255 F.3d 683 (9th Cir. 2001) ............................................................................................. 5, 6

*Derrico v. Sheehan Emergency Hos.*,
844 F.2d 22 (2d Cir. 1988)....................................................................................................... 5

*DiFiore v. Am. Airlines, Inc.*,
646 F.3d 81 (1st Cir. 2011)............................................................................................. 2, 3, 4

*Gonzalez v. Gan Israel Pre-School*,
No. 12-cv-6304(MKB), 2014 WL 1011070 (E.D.N.Y. Mar. 14, 2014)...................... 10

*Hart v. Rick's Cabaret Int'l, Inc.*,
967 F. Supp. 2d 901 (S.D.N.Y. 2013)................................................................................... 7

Page(s)

*Inland Empire Paper Co.*,
88 LA 1096 (Levak, 1987) ................................................................................................... 5

*Kline v. Sec. Guards, Inc.*,
386 F.3d 246 (3d Cir. 2004) ............................................................................................ 5, 6

*Levy v. Verizon Info. Servs.*,
498 F. Supp. 2d 586 (E.D.N.Y. 2007) ................................................................................ 5

*Luiken v. Domino's Pizza, LLC*,
654 F. Supp.2d 973 (D.Minn. 2009) ................................................................................ 10

*Luiken v. Domino's Pizza, LLC*,
705 F.3d 370 (8th Cir. 2013) .............................................................................................. 8

*Mass. Delivery Ass'n v. Coakley*,
No. 13-2307, 2014 WL 4824976 (1st Cir. Sept. 30, 2014) ................................................. 3

*Northwest, Inc. v. Ginsburg*,
134 S.Ct. 1422 (2014) ........................................................................................................ 3

*Rich v. Associated Brands, Inc.*,
379 Fed.Appx. 78 (2d Cir. 2010) ....................................................................................... 9

*Rowe v. New Hampshire Motor Transport Ass'n*,
128 S.Ct. 989 (2008) .......................................................................................................... 3

*U.S. v. Castro*,
813 F.2d 571 (2d Cir. 1987) ............................................................................................... 8

*Vera v. Saks & Co.*
335 F.3d 109 (2d Cir. 2003) ........................................................................................... 5, 6

*Walters v. Am. Coach Lines of Miami, Inc.*,
575 F.3d 1221 (11th Cir. 2009) .......................................................................................... 1

*Wilk v. VIP Health Care Servs., Inc.*,
No. 10 Civ. 5530(ILG)(JMA), 2012 WL 560738 (E.D.N.Y. Feb. 21, 2012) ................... 10

## Other Authorities

29 C.F.R. §§ 531.50-60 ......................................................................................................... 7

29 C.F.R. § 531.55 ................................................................................................................ 7

29 C.F.R. § 531.60 ................................................................................................................ 7

|  | Page(s) |
|---|---|
| 29 U.S.C. § 185(a) (LMRA § 301) | 4, 5, 6 |
| 49 U.S.C. § 13102(23) | 4 |
| 49 U.S.C. § 13505 | 1, 2 |
| 49 U.S.C. § 13505(a) | 2 |
| 49 U.S.C. § 13505(b) | 2 |
| 49 U.S.C. § 14501(c)(1) | 4 |
| FTC Policy Statement on Deception, Appended to *Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984) | 9 |
| New York Labor Law § 196-d (McKinney 2014) | passim |

I.  **PLAINTIFFS' NYLL CLAIM IS PREEMPTED BY THE FAAAA.**[1]

   A.  **The DOT Has – and Regularly Exercises – Jurisdiction Over UTF.**

Plaintiffs argue that the FAAAA cannot preempt their § 196-d claim because UTF, their employer, is not subject to the Secretary of Transportation's jurisdiction, and UTF thus remains "outside of the FAAAA's umbrella." Specifically, they argue that 49 U.S.C. § 13505, which provides that companies not in the transportation business are outside the DOT's jurisdiction, "deprives the Secretary of jurisdiction over [UTF's] employees." Opp. 2. This is wrong.

<u>First</u>, UTF is licensed by the DOT/Federal Motor Carrier Safety Administration ("FMCSA") and registered with the DOT as a "motor carrier." It holds a Certificate and Permit "to engage in transportation as a common carrier of property (except household goods) and contract carrier of property (except household goods), respectively, by motor vehicle in interstate or foreign commerce." Riaz Dec. ¶ 6, Ex. 3. As a matter of law, these facts alone are dispositive as to the Secretary's jurisdiction. *See Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1227 (11th Cir. 2009) ("ACLM was licensed by the DOT, has the FMCSA authorizations necessary to be an interstate motor carrier, and was audited in the past by the DOT. . . . [T]he fact that a company holds these kind of authorizations indicates that the DOT has exercised jurisdiction over it."); *see also Baez v. Wells Fargo Armored Service Corp.*, 938 F.2d 180, 182 (11th Cir. 1991)("Wells Fargo is subject to the Secretary's jurisdiction under the Motor Carrier Act. In fact, the permit issued by the ICC indicates that jurisdiction has already been exercised.") (citations omitted).

<u>Second</u>, the DOT has repeatedly *exercised jurisdiction* over UTF, as UTF is regularly

---

[1] Citations are to the SAC, the Declaration of Teepoo Riaz, Esq., dated September 12, 2014 ("Riaz Dec."), the Reply Declaration of Teepoo Riaz, Esq., dated October 23, 2014 ("Riaz Reply Dec."), and Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion, dated October 10, 2014 ("Opp."). Capitalized terms used but not defined have the meanings ascribed to them in Defendants' Memorandum of Law dated September 12, 2014.

inspected by the FMCSA. Riaz Reply Dec. ¶ 3, Ex. 1 (noting a finding of UTF violations).[2]

Plaintiffs cite to *no authority* to support their argument that § 13505 can even be used to undermine the preemptive effect of the FAAAA on state laws like § 196-d (which plainly "relate[] to a price, route, or service of any motor carrier . . . or any motor private carrier"). This is hardly surprising. There is no such authority.[3]  Plaintiffs devote most of their analysis to *Bilyou v. Dutchess Beer Dist., Inc.*, 300 F.3d 217, 229 (2d Cir. 2002), ignoring the key distinguishing factor: UTF is registered with the DOT; in *Bilyou,* defendant was not.  *Id.* at 229.[4]

### B.    As In *DiFiore*, Plaintiffs' NYLL § 196-d Claim Is Preempted By the FAAAA.

In their opening memorandum, Defendants demonstrated that the FAAAA preempts Plaintiffs' § 196-d claim, citing *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81 (1st Cir. 2011), a case on all fours here. In *DiFiore*, the First Circuit found that a Massachusetts tip law similar to § 196-d had "a *direct connection* to air carrier prices and services and can fairly be said to regulate

---

[2] *See* Riaz Reply Dec. Ex. 1 (report issued after an FMCSA inspection "[p]ursuant to authority contained in Title 49, Code of Federal Regulations, Section 396.9(c) . . .", reciting the DOT's jurisdiction in multiple places.)

[3] This absence of case law squares with the original purpose of § 13505, which was to relieve "a firm that hauls its own wares" from the burden of regulations relating to interstate commerce (*see Am. Trucking Ass'n, Inc. v. I.C.C.*, 672 F.2d 850, 851-52 (11th Cir. 1982)), not to deny federally-registered carriers the benefit of federal preemption, as Plaintiffs seek to do here. Indeed, underscoring that this statute was intended as an elective benefit to the carrier, not as a mandatory rule, a predecessor to § 13505 required that, in order to take advantage of the exemption from the Secretary's jurisdiction, a parent corporation that transported property for its own benefit would need to, among other things, "notif[y] the Commission of its intent or one of its subsidiaries' intent to provide transportation." *Id.* at 852. Thus, Plaintiffs' attempt to use § 13505 to strip away federal jurisdiction fails.

[4] Even if UTF were not licensed, the argument that § 13505 denies the DOT jurisdiction over UTF would fail. The Secretary generally has no jurisdiction when property is carried (a) by "a person engaged in a business other than transportation" (§ 13505(a)); or (b) by an entity transporting for a member of its "corporate family" (§ 13505(b)). Neither situation is implicated with respect to UTF. Plaintiffs *admit* that UTF is in the transportation business ("U.T.F.'s primary business is transporting FreshDirect's groceries" (Opp. 3)), which necessarily means it is *not* a "person engaged in a business other than transportation". Furthermore, "corporate family" means "a group of *corporations*" (emphasis added). FreshDirect is an LLC, not a corporation. Indeed, in interpreting the predecessor statute to § 13505, in one of the very cases Plaintiffs rely on – *Am. Trucking Ass'n, Inc. v. I.C.C.*, 672 F.2d 850 (11th Cir. 1982) – the Eleventh Circuit determined that the "corporate family" statute applied *only* to corporations: "Turning to the issue of non-incorporated entities, we are similarly struck by the express language of the statute. . . . *[T]he statutory language pertaining to the question leaves no room for doubting that only incorporated entities may receive exemption for CIH [compensated intercorporate hauling] activities under sub-section (b).* Sub-section (b) refers to 'a member of a corporate family.' 49 U.S.C.A. s 10524(b)(1981). Sub-section (c) expressly defines 'corporate family' as a 'group of corporations.' *The language clearly precludes an interpretation that would permit any entity other than a corporate one to receive exemption for CIH activities.*" *Id.* at 853-54 (emphasis added).

both" and was, therefore, preempted. *Id.* at 87 (emphasis in original). Plaintiffs' effort to escape the rule and reasoning of *DiFiore* (through a "big picture approach" or any other approach for that matter) fails.

Defendants do not contend the FAAAA preempts all state laws that "relate[] to a price, route, or service" of a motor carrier. The question is where to draw the line to distinguish preempted laws from those that are too tenuously related to price, route or service. Plaintiffs' arguments that this case falls on the tenuous side are all unavailing.

First, they contend there is a bright line rule pursuant to which all laws that apply to all employees in a state (laws of "general application" or "background laws," (Opp. 7)) are *per se* not preempted. Opp. 6. This is not the test. Indeed, in *Mass. Delivery Ass'n v. Coakley*, No. 13-2307, 2014 WL 4824976 (1st Cir. Sept. 30, 2014), which Plaintiffs cite with approval (Opp. 6), the First Circuit noted that the "Attorney General [appellee] argue[d] for a categorical rule against preemption of 'background' labor laws, drawing on certain cases" and then rejected that approach, holding that "[t]he Attorney General's proposed construct, however, runs counter to Supreme Court precedent broadly interpreting the 'related to' language in FAAAA" (*id.* at *5-6), which it describes as "purposefully expansive."[5]  *Id.* at *4.

Second, Plaintiffs argue that (i) UTF "is not transporting property; it is being an online grocer"; (ii) § 196-d relates to "activities before the transportation begins"; and (iii) "the delivery charge does not relate to transporting property, but to the services Defendants provide as an online grocer." Opp. 7. Each assertion seeks to establish that UTF is somehow not "transporting

---

[5] Plaintiffs' citation of *Rowe v. New Hampshire Motor Transport Ass'n*, 128 S.Ct. 989 (2008) to support this "background law" rule also misses the mark as *Rowe* applies the "related to" test. *Id.* at 997-98. Further, courts have regularly found that the FAAAA preempts "background laws." *See*, *e.g.*, *Northwest, Inc. v. Ginsburg*, 134 S.Ct. 1422 (2014) (good faith and fair dealing claim preempted by Airline Deregulation Act).

3

property," which is required under the FAAA.[6] And each assertion is absurd, given that UTF is a DOT-registered "motor carrier." But further: (1) Plaintiffs *admit* that "U.T.F.'s primary business is transporting FreshDirect's groceries" (Opp. 3), and (2) the costs they contend the Delivery Fee covers (*id.* 7-8) – packing groceries into boxes and those boxes onto trucks – fall within the statutory definition of "transportation." *See* 49 U.S.C. § 13102(23).

Finally, Plaintiffs attempt to distinguish *DiFiore* claiming that UTF is a grocery store, making the "related to" analysis irrelevant, because, they argue, UTF transports groceries and is connected with FreshDirect and Holdings. Opp. 7. Plaintiffs cite no authority in support of this proposition, and there is none. And even if such authority existed, their argument ignores the fact that the FreshDirect group of companies transports and delivers groceries, and that UTF is a DOT-registered transportation company. In sum, the "big picture" cannot escape *DiFiore,* in which FAAAA preemption was affirmed with respect to a tip law virtually identical to § 196-d.

## II.     PLAINTIFFS' § 196-D CLAIM IS PREEMPTED BY LMRA § 301

### A.     Section 301 Preempts Plaintiffs' Claim that the CBAs Violate § 196-d.

Plaintiffs' reliance on *Alderman v. 21 Club Inc.*, 733 F. Supp. 2d 461 (S.D.N.Y. 2010), to argue that their § 196-d claim is independent of the CBAs, and thus immune from § 301 preemption (Opp. 11), is a red herring. SAC ¶ 69 alleges that the CBAs *themselves* violate § 196-d insofar as they encapsulate FreshDirect's "policies and practices," not that FreshDirect's conduct violated the CBAs. Thus, Plaintiffs' claim is "substantially dependent" on an interpretation of the CBAs and preempted. *Vera v. Saks & Co*. 335 F.3d 109, 116 (2d Cir. 2003) ("challenge to the lawfulness of a term of the CBA will require substantial interpretation of the

---

[6] *See* 49 U.S.C. § 14501(c)(1) ("a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier . . . with respect to the transportation of property").

4

CBA"). Plaintiffs also argue that preempting their § 196-d claim would shield employers from state law wage claims by unionized employees, because every wage claim concerns a compensation policy. Opp. 13. In fact, most unpaid wage claims in a union setting require "mere referral," so that they are not preempted. Here, by contrast, FreshDirect and the Union bargained over language related to the Delivery Fee, and the Court will be required to delve into that bargaining history, which is precisely what § 301 prohibits.[7]

### B. The Tips Provision is Ambiguous.

The parties agree that the CBA unambiguously provides that Plaintiffs must report tips (Opp. 14-16). But the ambiguity lies elsewhere – the need to determine *what constitutes the tips* that must be reported, which is at the root of this lawsuit. The Union's perception of FreshDirect's customers' beliefs about the Delivery Fee is imbedded in the term "tips," as demonstrated by the language of the CBAs themselves and the negotiations that produced them.[8]

### C. The Strong Link Between Plaintiffs' § 196-d Claim, the CBAs, and the Bargaining History, Makes the Review Prohibited by § 301 Essential.

Plaintiffs cite *Kline v. Sec. Guards, Inc.,* 386 F.3d 246, 256 (3d Cir. 2004) and *Cramer v. Consol. Freightways, Inc.,* 255 F.3d 683, 691-92 (9th Cir. 2001) for the proposition that a

---

[7] Plaintiffs' position that the 2007 CBA is irrelevant because it has expired (Opp. 12) mischaracterizes *Derrico v. Sheehan Emergency Hos.*, 844 F.2d 22 (2d Cir. 1988). In *Derrico*, the plaintiff's claim was based on events that occurred after the CBA expired, and so it could not implicate or arise out of that CBA. 844 F.2d at 23-25, 27. Here, by contrast, a CBA has been in effect at all relevant times. Plaintiffs also misconstrue *Derrico* to support their argument that prior CBAs are irrelevant to the § 301 inquiry. In *Levy v. Verizon Info. Servs.*, 498 F. Supp. 2d 586 (E.D.N.Y. 2007), the time period for the plaintiffs' claims spanned two CBAs, with an interim period in which no CBA was in effect. The court held that the plaintiffs' claims were preempted during the life of the CBAs – including the interim period. Similarly here, Plaintiffs' § 196-d claim spans March 18, 2008, to the date of filing, and the 2007 and 2010 CBAs cover this entire period. Further, the terms of the 2007 CBA, and the parties' bargaining history over the years, are highly relevant, because they bear on the Court's interpretation of the 2010 CBA Tips Provision. *See e.g.*, *Inland Empire Paper Co.*, 88 LA 1096, 1102 (Levak, 1987) ("Arbitrator . . . will make reference to pre-contract bargaining history . . . to arrive at the true meaning of the disputed provision.").

[8] This further distinguishes *Alderman*, in which the court did not need to figure out what "tip" meant, because the parties to that CBA had agreed that the fee was a tip. By contrast, here the Tip Provision requires interpretation to determine whether a reasonable customer believed the Delivery Fee to be a tip.

5

hypothetical connection between a state claim and a CBA is insufficient to cause preemption. They ignore the directive also set forth in *Kline* that *credible* hypothetical connections *are* sufficient. 386 F.3d at 256; *see also Cramer*, 255 F.3d at 691-92. Both decisions make clear that a court may be required to do more than confirm that a CBA is silent on an issue relevant to the state law claim (386 F.3d at 256; 255 F.3d at 692), because silence may indicate an implied contract term. Thus a CBA's silence itself may create an ambiguity that requires the court to interpret the CBA to resolve the state law claim. *See Vera,* 335 F.3d at 115 (because "the CBA is silent on this issue[,] we must interpret the CBA").

Here, the Court must make an inquiry that is neither academic nor hypothetical. FreshDirect has provided undisputed evidence of proposals and negotiated contract language, demonstrating years of bargaining concerning the Delivery Fee and its impact, or lack of impact, on tips. Williams' Dec. ¶¶ 5-15. Given the negotiations concerning the Delivery Fee and Tips Provision, the ambiguity here as to the meaning of "tip" requires the Court's interpretation of multiple CBA provisions and their bargaining history as part of the effort to discern whether FreshDirect's reasonable customers believed the Delivery Fee was a tip, which § 301 prohibits.

### III. PLAINTIFFS' OPPOSITION CONCEDES THAT THEIR §196-D CLAIM IS PREEMPTED BY THE FLSA IF § 531.55 APPLIES TO THEM, AND IT DOES.

Plaintiffs' authorities either have no bearing on Supremacy Clause preemption or actually support FreshDirect's position. Neither *Barenboim v. Starbucks Corp.*, 698 F.3d 104 (2d Cir. 2012) nor *Alderman* address the conflict between the FLSA and § 196-d, and, thus, are irrelevant. Nor do Plaintiffs address the Supreme Court's dictate that an employment practice violates the FLSA when the FLSA prohibits it. *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000). The FLSA prohibits categorizing mandatory fees as tips (29 C.F.R. § 531.55). Section 196-d directly contradicts this prohibition by requiring mandatory fees to be characterized as

6

tips, and § 196-d is, therefore, preempted.

To avoid this conclusion, Plaintiffs reject the only authority there is for their claim that they are entitled to receive the Delivery Fee as a wage – § 531.55. Plaintiffs contend (at 17-18) it is "irrelevant here" because it only applies to employees paid the tipped rate, conceding that their § 196-d claim is preempted if § 531.55 applies to them.[9] But Plaintiffs' sole authority actually supports FreshDirect's position that it *does* apply to them. *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 928-31 (S.D.N.Y. 2013) (using § 531.55 to determine if plaintiffs were entitled to a service charge as a wage or tip, even though employer did not take tip credit).

Further, Plaintiffs provide no authority for their proposition that an employer "must distribute [a mandatory fee] in the first place" (Opp. 18), presumably because the sole authority for this conclusion is set forth in § 531.55, which they have described as "irrelevant here." Yet, not even § 531.55 requires that a mandatory fee be paid to employees – as a wage or otherwise. Rather, it states that the mandatory fee "may" be used to satisfy an employer's wage obligations. *See Barenboim*, 698 F.3d at 112 (under the FLSA, an employer may retain a mandatory fee).[10]

In sum, § 531.55 applies to Plaintiffs, and its requirement that, when and if distributed, a mandatory fee must be distributed as a wage and not as a tip, directly conflicts with § 196-d, which requires that it be distributed as a tip and not as a wage. Therefore, § 196-d is preempted.

---

[9] Moreover, Plaintiffs rely upon 29 C.F.R. § 531.60 as the basis for their entitlement to the Delivery Fee as an hourly wage. SAC ¶130. Since § 531.60 does not mention mandatory fees, the Court must look elsewhere to determine whether Plaintiffs are so entitled. The only place is § 531.55. Because this section provides quite literally the only basis on which Plaintiffs can rest their FLSA overtime claim, they have also conceded, perhaps unwittingly, that they have no FLSA claim on the merits. Moreover, since § 531.60 is in the same subpart of the regulation as § 531.55 (*see* 29 C.F.R. §§ 531.50-60), even if Plaintiffs were correct that § 531.55 does not apply to them, then § 531.60 does not either, and Plaintiffs still fail to state a claim for overtime under the FLSA.

[10] The U.S. DOL agrees that payment is optional. Its Field Operations Handbook provides that: "[T]he employer has complete discretion in choosing the manner in which the compulsory service charge is used" (June 30, 2000 U.S. DOL FIELD OPERATIONS HANDBOOK, Ch. 30, sec. 30d03).

## IV. PLAINTIFFS FAIL TO REBUT DEFENDANTS' SHOWING THAT THE DELIVERY FEE IS NOT A GRATUITY.

FreshDirect's website repeatedly informs customers of the nature and purpose of the Delivery Fee. Plaintiffs point only to conclusory allegations to argue that a reasonable customer would nonetheless believe the Delivery Fee is a gratuity. What Plaintiffs miss is that the paucity of those allegations, even taken as true, demonstrates their implausibility. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In light of FreshDirect's website disclosures, such allegations do not plausibly allege that the Delivery Fee "purport[s]" to be a gratuity under § 196-d.

### A. Neither Plaintiffs' Conclusory Allegations nor the Amount of the Delivery Fee Show That it "Purport[s] To Be" a Gratuity.

Plaintiffs rely on: (1) allegations of questions from unnamed customers at unspecified times and places about whether the delivery personnel received the Delivery Fee; and (2) assertions that "the amount of the charge reflects what [customers] would reasonably expect to pay as a tip." Opp. 21-22. Neither states a plausible claim.

Plaintiffs' allegations about customers' questions are unreliable because they do not provide their *responses*. Plaintiffs miss the point by arguing that such inquiries are more appropriate at the class certification stage. Opp. 21. As explained in *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 376 (8th Cir. 2013), a customer, who has been explicitly told by the delivery personnel that the charge is not a tip, could not then reasonably believe otherwise. Thus, if Plaintiffs honestly answered that the Delivery Fee is not a tip, no reasonable customer could believe it is. This likely explains why Plaintiffs omit their responses.[11] Further underscoring the implausibility of Plaintiffs' allegations is the absence of any contextual details such as names,

---

[11] This is also why courts, recognizing that a party may mislead through omission, "historically have required a party offering testimony as to an utterance to present fairly the . . . context of the statement", not "mere fragments". *U.S. v. Castro*, 813 F.2d 571, 576 (2d Cir. 1987).

8

dates or locations. Nor do Plaintiffs offer any specifics to suggest that these customers, a mere fourteen out of hundreds of thousands, are reasonable customers. *See* FTC Policy Statement on Deception, Appended to *Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 174 (1984) (for "reasonable consumer" standard, "[a] company is not liable for every interpretation or action by a consumer").

Plaintiffs' assertion that the Delivery Fee reflects what a customer would reasonably expect to tip is implausible. A Manhattan customer ordering a single $35 bottle of wine to a high-rise, and another ordering $350 worth of canned goods to a five-story walkup, could not both view a $5.99 Delivery Fee as the amount of a customary tip. *See Rich v. Associated Brands, Inc.*, 379 Fed.Appx. 78, 80 (2d Cir. 2010) (declining to credit "implausible" allegation).

> **B.     Plaintiffs Cannot Overcome Defendants' Showing That FreshDirect's Website Establishes That the Delivery Fee is Not a Tip.**

Plaintiffs minimize the extensive disclosures on FreshDirect's website regarding delivery costs, waivers of delivery fees, taxes, and tipping, etc. But those disclosures inform the company's customers that the Delivery Fee is not a gratuity. First, Plaintiffs argue (Opp. 22) that the website describes the delivery process, not what the charge covers, but that description appears *directly below* the fees. Second, Plaintiffs' assertion that "[t]he mere fact that some customers do not pay the fee does not take away from how the reasonable customer perceives the fee" (Opp. 23) misses the point. No reasonable customer who sees the promotion "UNLIMITED FREE DELIVERY" on the company's home page[12] would take it to mean FreshDirect offers discounts at the expense of its delivery personnel. Finally, Plaintiffs cite to *Carpaneda v. Domino's Pizza, Inc.*, 991 F. Supp.2d 270 (D. Mass. 2014) to argue these disclosures are "not

---

[12] https://www.freshdirect.com/index.jsp, last visited October 23, 2014. Contrary to Plaintiffs' contention (Opp. 23) that these fee waivers are irrelevant, because not every customer is aware of the various discounted options, the Delivery Pass, which is advertised in all capital letters on the home page, is unavoidable.

enough." Opp. 22. Plaintiffs again ignore context. Pizza delivery, where a driver makes deliveries in his/her own car,[13] requires little company investment. Moving tons of groceries each day across five states in refrigerator/freezer trucks requires far more. Customer expectations about delivery costs and tipping customs thus differ – reflected by the fact that plaintiff's tips in *Carpaneda* were credited towards their minimum wage, unlike Plaintiffs' here. *Id.* at 271.[14]

## V. PLAINTIFFS FAIL TO REBUT DEFENDANTS' SHOWING THAT THE SAC FAILS TO PLEAD A CLAIM AGAINST MCINERNEY.

Plaintiffs simply parrot the statutory test again. The only specific factual allegation they point to in their Opposition is McInerney's participation in a group meeting following Superstorm Sandy – a manifestly anomalous event and not enough. Opp. 24.[15] *See Bravo v. Established Burger One LLC*, No. 12 Civ. 9044(CM), 2013 WL 5549495, at *7 (S.D.N.Y. Oct. 8, 2013) ("mere boilerplate allegations that an individual meets the various prongs of the economic reality test" insufficient).

| LITTLER MENDELSON, P.C. | ALLEGAERT BERGER & VOGEL LLP |
|---|---|
| By: /s/David M. Wirtz <br> David M. Wirtz <br> 900 Third Avenue <br> New York, New York 10022 <br> (212) 583-9600 | By: /s/David A. Berger <br> David A. Berger <br> 111 Broadway, 20th Floor <br> New York, New York 10006 <br> (212) 571-0550 |

*Attorneys for Defendants Fresh Direct, LLC, Fresh Direct Holdings, Inc., U.T.F. Trucking, Inc., Jason Ackerman and David McInerney*

---

[13] *See Luiken v. Domino's Pizza, LLC*, 654 F. Supp.2d 973, 977 (D.Minn. 2009).

[14] Plaintiffs' reliance on the fact that the *Carpaneda* defendants also provided disclosure is unavailing. In *Carpaneda*, the disclosure was at the bottom of the page under the section entitled "Legal Stuff" – surely a black hole if ever there was one. 991 F. Supp.2d at 271. Further, the court was persuaded by the existence of customers who placed orders over the phone and who received no disclaimers when placing their orders. *Id.* at 272, 274.

[15] The more fulsome allegations in Plaintiffs' authorities – entirely lacking here – highlight this inadequacy. *See, e.g., Wilk v. VIP Health Care Servs., Inc.*, No. 10 Civ. 5530(ILG)(JMA), 2012 WL 560738, at *8-9 (E.D.N.Y. Feb. 21, 2012) (defendant had authority over "how, when, and how much [Plaintiff] was to be paid", and – unlike here, where Plaintiffs allege more than 300 delivery personnel alone (SAC ¶¶ 25, 31) – there was "no reason to question the plausibility of Wilk's allegations in light of VIP's size or number of employees"); *Gonzalez v. Gan Israel Pre-School*, No. 12-cv-6304(MKB), 2014 WL 1011070, at *10 (E.D.N.Y. Mar.14, 2014) (default judgment granted where defendant informed plaintiffs of their schedules and wages, among other things.)